OPINION
{¶ 1} Defendant-appellant, Joshua Michael Baker, appeals a decision of the Butler County Court of Common Pleas convicting him of felonious assault and imposing a three-year sentence and restitution order. For the reasons outlined below, we affirm in part, reverse in part, and remand.
 {¶ 2} On the evening of September 3, 2006, appellant's girlfriend, Tricia Meerhoff, was at a party drinking beer with friends at a Middletown residence in celebration of Labor Day. Around 11:00 p.m., Meerhoff left the residence to walk to the nearby home she shared *Page 2 
with appellant. Longtime friend Brandon Lainhart accompanied her on the walk home. The pair encountered appellant in an alley, and appellant began arguing with Meerhoff. When Lainhart intervened, an altercation ensued. Lainhart punched appellant two or three times during the scuffle. Appellant then hit Lainhart in the head with a 16-ounce claw hammer. The blow inflicted extensive damage to Lainhart's left eye, fracturing the orbital bone and causing the eye to protrude from the socket. As a result of the injury, Lainhart was permanently blinded in his left eye.
 {¶ 3} Appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. Appellant unsuccessfully moved to suppress statements he made to police. Following a jury trial, appellant was found guilty. At the May 29, 2007 sentencing hearing, the trial court imposed a three-year prison term and continued the issue of restitution. Despite the continuance, the trial court issued a judgment entry of conviction on May 31, 2007. The entry purported to retain jurisdiction over the issue of restitution. Appellant filed a notice of appeal.
 {¶ 4} The trial court held hearings on the issue of restitution on June 19, 2007 and August 21, 2007. On August 24, 2007, the court issued an addendum entry to the judgment of conviction ordering appellant to pay a total of $16,713.91 in restitution to Lainhart's medical providers. Appellant filed an amended notice of appeal.
 {¶ 5} In accordance with State v. Baker, Slip Opinion No. 2008-Ohio-3330, a recent decision by the Ohio Supreme Court holding that only one document can constitute a final appealable order, an amended judgment entry of conviction combining the sentencing and restitution entries was filed on August 14, 2008. See McAllister v. Smith, Slip Opinion No. 2008-Ohio-3881 (stating that the proper manner in which to address a deficient sentencing entry was by motion in the trial court for a revised sentencing entry). Following the issuance of this final appealable order, we consider the merits of the five assignments of error raised in *Page 3 
appellant's premature notices of appeal dated June 28, 2007 and September 10, 2007, respectively. App. R. 4(C). See, e.g., State v.Lovely, Warren App. No. CA2003-06-063, 2004-Ohio-701, fn. 2.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS ORAL STATEMENTS."
 {¶ 8} Appellant moved to suppress statements he made to Officer Dennis Jordan of the Middletown Police Department on the night of the incident. Officer Jordan responded to a 911 call placed by appellant after the altercation with Lainhart. During the course of Officer Jordan's investigation, appellant admitted that he hit Lainhart in the head with the hammer. Appellant maintains that his statements to Officer Jordan were the product of custodial interrogation and warranted suppression because Miranda warnings were not administered to him prior to questioning.
 {¶ 9} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. The trial court, as the trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Mai, Greene App. No. 2005-CA-115, 2006-Ohio-1430, ¶ 9. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 10} The Miranda warnings serve as prophylactic safeguards to protect a person's Fifth Amendment privilege against compelled self-incrimination. Miranda v. Arizona (1966), 384 U.S. 436, 478-79,86 S.Ct. 1602. The police are not required to issue Miranda warnings to every individual they question. Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711. Rather, such warnings must be issued only when the police subject a suspect to *Page 4 
"custodial interrogation." Miranda at 444. See, also, State v.Biros, 78 Ohio St.3d 426, 440, 1997-Ohio-204. Therefore, the threshold inquiry is whether the individual being questioned was in custody at the time of questioning. California v. Beheler ( 1983), 463 U.S. 1121, 1125,103 S.Ct. 3517; Mathiason at 495.
 {¶ 11} To determine that a person is in custody for Miranda purposes, there must have been either a formal arrest or a restraint of the individual's freedom of movement commensurate with that of a formal arrest. Beheler, 436 U.S. at 1125. This is a fact-intensive inquiry necessitating an examination of the totality of the circumstances. See id.; State v. Gumm, 73 Ohio St.3d 413, 429, 1995-Ohio-24. The relevant inquiry is whether an objective, reasonable person in the suspect's place would have felt that he was not free to leave. Berkemer v.McCarty (1984), 468 U.S. 420, 442, 104 S.Ct. 3138.
 {¶ 12} It is undisputed that Miranda warnings were not administered to appellant prior to being questioned by Officer Jordan. However, the facts do not indicate that appellant was in custody when he made the incriminating statements. Upon arriving at the scene in response to a 911 dispatch regarding a burglary in progress, Officer Jordan observed Meerhoff outside the residence and appellant on the porch standing in the doorway. Officer Jordan testified that he heard a loud thump, which turned out to be appellant dropping the hammer inside the door. The officer removed appellant from the porch, conducted a pat-down frisk, and ordered appellant to remain where he was while Officer Jordan investigated the porch area.
 {¶ 13} Appellant contended that Lainhart attempted to break in the back door of the residence. He explained to Officer Jordan that he had the hammer to protect himself, and claimed that he and Lainhart had just engaged in a scuffle on the back porch. Shortly after, Officer Jordan heard over his radio that Lainhart had been located by Officer Tom Lawson and needed an ambulance. Outside of appellant's hearing, Officer Lawson informed Officer *Page 5 Butler CA2007-06-152 Jordan of Lainhart's extensive eye injury. When Officer Jordan asked whether the damage was consistent with a claw hammer, Officer Lawson answered in the affirmative.
 {¶ 14} Immediately after the radio broadcast, appellant asked Officer Jordan to assist him in recovering a hat lost during the fight. Appellant led Officer Jordan to the alley, where Officer Jordan observed droplets of blood on the ground. He again questioned appellant about what had happened, and directly asked whether appellant had used the hammer to hit Lainhart. Appellant answered yes. He explained that Meerhoff had left their residence earlier that evening to hang out with friends at a neighbor's house. Appellant could see Meerhoff and others on the neighbor's porch consuming alcohol and yelling. He periodically stepped onto his back porch where he could see the party to check on Meerhoff. Appellant stated that he could see Lainhart and Meerhoff arguing at the party, and that Lainhart followed her home from the party and continued to argue with her along the way. Appellant went out into the alley to await their arrival and brought the hammer, he insists, only to intimidate Lainhart.
 {¶ 15} Examining the totality of the circumstances, we find that appellant was not in custody for Miranda purposes when he made the incriminating statements to Officer Jordan. Appellant was neither formally under arrest at that time nor was his freedom of movement restrained to a degree that was commensurate with a formal arrest.Beheler, 436 U.S. at 1125. Appellant emphasizes the fact that Officer Jordan ordered him to "stay put" after he was frisked while the officer went up onto the porch of appellant's residence. At this point, however, the officer was merely investigating a potential crime in responding to the 911 dispatch regarding a burglary in progress.[1] He did not yet know whether appellant was the burglar, and ordered appellant to "stay put" in the course of his investigation. Such an order *Page 6 
was not commensurate with a formal arrest.
 {¶ 16} This court has previously noted that "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not fall within the ambit of custodial interrogation." State v. Rivera-Carrillo, Butler CA2001-03-054, 2002-Ohio-1013, ¶ 17. After discovering the claw hammer inside the doorway and learning that Lainhart's injury was consistent with being struck with such a hammer, Officer Jordan pursued the investigation to ascertain additional facts rather than prematurely placing appellant under arrest. At the time, appellant had admitted to striking Lainhart during the fight, but did not say he had used the hammer to do so.
 {¶ 17} Notably, Officer Jordan accompanied appellant out to the alley on appellant's own request. Obviously, appellant did not feel as if his freedom of movement was restricted if he felt that he was free to go retrieve a hat. After observing blood in the alley, Officer Jordan again questioned appellant about the altercation to investigate further. At the time appellant was questioned and made incriminating statements, he was not handcuffed, told he was under arrest, or placed in a police cruiser. There was no restraint at all upon appellant's freedom of movement. Appellant was not formally placed under arrest until after he and Officer Jordan spoke in the alley and returned to appellant's residence.
 {¶ 18} In support of his argument that he was in custody, appellant emphasizes that Officer Jordan's investigation focused upon him. When Officer Jordan responded to appellant's residence, he had a duty to investigate the dispatch which called him to the scene. He questioned appellant in the course of his investigation to decipher the facts. This court has previously noted that "Miranda was not intended to hamper the ability of law enforcement officers to legitimately investigate crimes. * * * Where the suspect is not in custody, the fact that an officer may consciously seek to elicit incriminating statements, even where the suspect is the focus of the investigation, does not necessarily entitle the suspect to *Page 7 
a Miranda warning." State v. Johnson (May 1, 2000), Clermont App. No. CA99-06-061, at 7, citing Minnesota v. Murphy (1984), 465 U.S. 420, 431,104 S.Ct. 1136. (Citations omitted.)
 {¶ 19} We conclude that, under the facts and circumstances of this case, it is unlikely that a reasonable person in appellant's place would have felt that he was not free to leave. Therefore, Officer Jordan's questioning in pursuit of a police investigation did not amount to custodial interrogation. Miranda warnings were thus not required and the trial court did not err in overruling appellant's motion to suppress.
 {¶ 20} Appellant's first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO INSTRUCT THE JURY ON THE ELEMENTS OF AGGRAVATED ASSAULT."
 {¶ 23} Appellant challenges the trial court's denial of his requested jury instruction on aggravated assault, insisting that he submitted sufficient evidence of provocation to warrant the instruction.
 {¶ 24} Appellant was convicted of felonious assault, a second-degree felony. The felonious assault statute makes it a crime for a person to knowingly cause serious physical harm to another. R.C. 2903.11(A)(1). Appellant stipulated to the serious physical harm element of the offense at trial, but attempted to produce mitigating evidence of provocation to obtain a jury instruction on the inferior degree offense of aggravated assault.[2] When a person inflicts serious physical harm upon another in response to sudden passion or rage brought on by serious provocation by the victim, and that provocation is reasonably sufficient *Page 8 
to incite the person into using deadly force, the person commits the offense of aggravated assault, a fourth-degree felony. R.C. 2903.12(A). Appellant maintains that the presence of the mitigating factor of serious provocation entitled him to a jury instruction on aggravated assault.
 {¶ 25} An appellate court will reverse a trial court's refusal to give a proposed jury instruction where the trial court abused its discretion and the omission of the instruction was prejudicial to the complaining party. Enderle v. Zettler, Butler App. No. CA2005-11-484,2006-Ohio-4326, ¶ 37. In order to warrant an instruction on the inferior degree offense of aggravated assault, the alleged provocation must have been reasonably sufficient to incite sudden passion or rage. State v.Chambers, Butler App. No. CA2004-03-069, 2005-Ohio-1682, ¶ 9, citingState v. Mack, 82 Ohio St.3d 198, 201, 1998-Ohio-375. Once this objective standard is met, the analysis turns to the subjective inquiry of whether the defendant actually was under the influence of sudden passion or rage. Chambers at ¶ 9.
 {¶ 26} Appellant submits that he was provoked into attacking Lainhart because Lainhart had been drinking on the night in question, followed Meehoff home, argued with Meerhofff and appellant, struck appellant first, and prevented appellant's retreat by holding on to his clothing during the fight. He also emphasized at trial that he was very fearful of Lainhart. Lainhart offered a conflicting version of events. He testified that he accompanied Meerhoff, who was extremely intoxicated, home because he anticipated that she and appellant would get into an argument. He wanted to protect her from appellant, if necessary, because he claimed appellant had beaten Meerhoff on previous occasions. He also testified that appellant was belligerent with him and Meerhoff upon meeting them in the alley, insisting that the two were having an affair. The argument then escalated into a physical altercation between him and appellant. We need not choose between these inconsistent accounts, as the credibility of the witnesses was primarily within the province of the jury as the trier of fact. *Page 9 State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 27} A review of the record reveals that the alleged provocation was not reasonably sufficient to incite appellant into sudden passion or rage and that appellant was not actually acting under the influence of sudden passion or rage when he used deadly force against Lanihart. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and * * * incite or [ ] arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." State v.Deem (1988), 40 Ohio St.3d 205, paragraph 5 of the syllabus. Contrary to this standard, the evidence does not suggest that appellant's actions were sudden or that he was seriously provoked to the point of acting in a fit of rage.
 {¶ 28} Appellant admitted that he had been watching Meerhoff at the party from his back porch since her departure, checking on her about every half hour. According to appellant's testimony, when he saw Meerhoff and Lainhart returning, he picked up the hammer, walked to the alley, and "just stood there waiting on [Lainhart]."
 {¶ 29} Conduct committed under extreme emotional stress is that which is performed under the influence of sudden passion or in the heat of the moment, without time and opportunity for reflection or passions to subside. State v. Copen (1992), Lake App. No. 91-L-114, 1992 WL 361452, at *4. By his own admission, appellant grabbed the hammer in advance of confronting Lainhart. He waited in the alley for Lainhart and Meerhoff to approach him. This conduct demonstrates a level of reflection and proactivity, rather than a sudden reaction. See id. See, also,Deem at 211. Such actions do not comport with the concept of provocation. Moreover, appellant's fear of Lainhart, alone, was insufficient to qualify as the kind of emotional state necessary to incite sudden passion or rage. State v. *Page 10 Mack, 82 Ohio St.3d at 201.
 {¶ 30} We conclude that appellant failed to meet the burden of establishing sufficient evidence of provocation to warrant an instruction on aggravated assault. The trial court therefore did not abuse its discretion in refusing to give the proposed instruction.
 {¶ 31} Appellant's second assignment of error is overruled.
 {¶ 32} Assignment of Error No. 3:
 {¶ 33} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY GIVING AN INCORRECT JURY INSTRUCTION ON SELF-DEFENSE."
 {¶ 34} Appellant contends that the trial court should have based its self-defense instruction on 4 Ohio Jury Instructions (2006), Section 411.33. This instruction applies when a defendant asserts self-defense as a defense against the danger of bodily harm to him not likely to cause death or great bodily harm. Instead, the trial court based its self-defense instruction on 4 Ohio Jury Instructions, Section 411.31. This instruction applies when a defendant asserts self-defense as a defense against the danger of death or great bodily harm to him.
 {¶ 35} As indicated, we review the trial court's refusal to give a proposed jury instruction for an abuse of discretion. Enderle,2006-Ohio-4326 at ¶ 37. Appellant alleged that Lainhart was bigger than him, had never liked him, and always tried to bully him. According to appellant's version of events, Lainhart was behaving belligerently towards him on the night in question. Lainhart, however, testified that appellant began yelling at him and Meerhoff when they encountered appellant in the alley. Appellant stated that he took the hammer into the alley only to intimidate Lainhart. After Lainhart punched appellant three times, appellant struck him in the head with the hammer. Appellant insists that this conduct falls within the ambit of self-defense against bodily harm, and essentially contends that he did not have to be faced with death or great bodily harm to use a hammer to defend himself. *Page 11 
 {¶ 36} After reviewing the facts, we find that the trial court's self-defense instruction based upon death or great bodily harm was appropriate. A defendant may use that force which is reasonably necessary to repel an attack. State v. McLeod (1948), 82 Ohio App. 155,157. However, even if appellant's version of events is believed, he failed to demonstrate that the force reasonably necessary to repel Lainhart's attack required the potentially lethal act of hitting Lainhart in the head with a 16-ounce claw hammer. See id. It is clear that appellant used deadly force when he was not faced with deadly force, only fists.
 {¶ 37} The parties stipulated that Lainhart suffered serious physical harm. Lainhart's serious and permanent injury, along with the manner in which appellant attacked Lainhart, supported the trial court's observation that the evidence "would show that no reasonable juror could find that deadly force was not used in this case." The trial court therefore did not abuse its discretion in submitting the self-defense instruction based upon death or great bodily harm and in refusing appellant's requested instruction on bodily harm.
 {¶ 38} Appellant's third assignment of error is overruled.
 {¶ 39} Assignment of Error No. 4:
 {¶ 40} "THE TRIAL COURT LACKED JURISDICTION TO IMPOSE AN ORDER OF RESTITUTION ON APPELLANT."
 {¶ 41} Appellant argues that the trial court lacked subject matter jurisdiction to order restitution because it was divested of jurisdiction over the matter after it journalized the initial judgment entry of conviction on May 31, 2007.
 {¶ 42} In State v. Baker, 2008-Ohio-3330, the Ohio Supreme Court considered what a judgment of conviction must include pursuant to Crim. R. 32(C) to be a final appealable order. The Baker court held that "a judgment of conviction is a final appealable order under R.C. 2505.02
when it sets forth (1) the guilty plea, the jury verdict, or the finding of the court upon which the conviction is based; (2) the sentence; (3) the signature of the judge; and (4) the *Page 12 
time stamp showing journalization by the clerk of court." Id. at ¶ 16. The court noted that only one document could constitute a final appealable order. Id. at ¶ 15.
 {¶ 43} The trial court's May 31, 2007 judgment entry of conviction did not satisfy all four of the Baker requirements. In accordance with the first Baker element, it contained the guilty finding by the jury; in accordance with the third element, the judge's signature; and in accordance with the fourth element, the time stamp showing journalization. As for the second Baker element, the sentence, the entry ordered appellant to pay restitution in an amount "to be determined on June 19, 2007." Where a judgment entry does not settle either the amount of restitution or the method of payment, it is not a final appealable order. State v. Kuhn, Defiance App. No. 4-05-23, 2006-Ohio-1145, ¶ 8;In re Zakov (1995), 107 Ohio App.3d 716, 718; In re Holmes (1980), 70 Ohio App.2d 75, 77. The May 31, 2007 entry thus lacked a complete sentence and was merely interlocutory.
 {¶ 44} The August 24, 2007 addendum entry to the judgment of conviction also did not qualify as a final appealable order underBaker because it contained only restitution information and not the guilty plea or the remainder of the sentence. Nor could the addendum entry be considered in conjunction with the May 31, 2007 entry to be a final appealable order after the Baker court declared that only one document could constitute a final appealable order.
 {¶ 45} The trial court's August 14, 2008 amended judgment entry of conviction, which combined the guilty verdict, complete sentence, judge's signature, and time stamp, complied with all four Baker
requirements. Appellant's fourth assignment of error is overruled on that basis.
 {¶ 46} Assignment of Error No. 5:
 {¶ 47} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY RESTITUTION TO THIRD PARTY MEDICAL PROVIDERS." *Page 13 
 {¶ 48} Appellant asserts that the trial court erred in ordering restitution to Lainhart's medical providers because there was no evidence that Lainhart sustained actual economic loss and because the applicable statute does not authorize restitution to third parties.
 {¶ 49} R.C. 2929.18(A)(1) allows a sentencing court to order restitution "to the victim of the offender's crime * * * in an amount based on the victim's economic loss." R.C. 2929.01(M) defines "economic loss" as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes * * * any property loss [or] medical cost * * * incurred as a result of the commission of the offense." Prior to imposing a restitution order, a sentencing court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence. State v. Borders, Clermont App. No. CA2004-12-101, 2005-Ohio-4339, ¶ 36, quoting State v. Gears (1999),135 Ohio App.3d 297, 300.
 {¶ 50} At the June 19, 2007 restitution hearing, the state submitted exhibit 1-RH. This exhibit was a compilation of bills sent to Lainhart by various medical providers for the treatment of his eye injury. The bills totaled $27,378.60. Lainhart testified at the hearing that he did not have any medical insurance, therefore none of these bills had been paid by an insurer. He also testified that no public agencies had made any payments towards these bills on his behalf, and that, as far as he knew, none had been written off. The hearing was continued at defense counsel's request so that counsel could subpoena current billing records from the medical providers to ascertain whether any amounts had been paid towards the balances by any source in order to accurately determine Lainhart's economic losses.
 {¶ 51} At the August 21, 2007 continuation of the restitution hearing, the court considered evidence consisting of updated medical bills presented directly to the court by Lainhart's medical providers per court order. These documents showed that some of the bills contained in state's exhibit 1-RH had been written off. The court determined that the amount *Page 14 
of restitution to be ordered would reflect the amount that was currently owing to all of the medical providers at that point. The updated medical bills established balances owing to only four providers in a total amount of $16,713.91. The court's August 14, 2008 amended judgment entry reflects this amount.
 {¶ 52} Appellant argues that the mere existence of medical bills does not show Lainhart's actual economic loss. He maintains that the evidence did not establish whether Lainhart had paid on any of the balances owing to the medical providers or whether any were paid by insurance, written down, or written off. The evidence, however, speaks to the contrary. Lainhart testified that he did not have medical insurance. In addition, the restitution hearing was continued for the purpose of ascertaining the actual amounts owing to the medical providers. The evidence presented at the August 21, 2007 continuation of the hearing established that a number of the medical bills had in fact been written off. The documents subpoenaed from the medical providers following the continuation of the hearing established the amounts currently owing to those providers. There was thus competent, credible evidence supporting the August 14, 2008 restitution order reflecting the current balances due to the medical providers.
 {¶ 53} Appellant also argues that the current version of R.C. 2929.18(A)(1) does not authorize restitution payment to third parties. In 2004, the General Assembly amended R.C. 2929.18(A)(1) to delete certain third-party language.[3] This legislative action, however, did not *Page 15 
operate as an absolute prohibition on all third-party restitution. The Ohio Supreme Court recently interpreted the current version of R.C. 2929.18(A)(1) in State v. Bartholomew, Slip Opinion No. 2008-Ohio-4080:
 {¶ 54} "The amendments to R.C. 2929.18(A)(1) did not eliminate all third-party payees. * * * [A] trial court under the current version of R.C. 2929.18(A)(1) retains the discretion to order that restitution be paid to certain third parties, namely, an adult probation department, the clerk of courts, or another agency designated by the court."Bartholomew at ¶ 14.
 {¶ 55} In Bartholomew, the high court was confronted with a case in which the trial court had ordered a defendant to pay restitution to the Attorney General's Victims of Crime fund for reimbursement for the victim's counseling expenses. Id. at ¶ 2. The high court sought to clarify an earlier decision, State v. Kreischer, 109 Ohio St.3d 391,2006-Ohio-2706, in which it had noted that the amendments to R.C. 2929.18(A)(1) had "delet[ed] all references to restitution for third parties." Addressing the case before it, the high court held that the plain language of the current version of R.C. 2929.18(A)(1) authorized a trial court to order restitution to the reparations fund as a permissible "agency designated by the court" under R.C. 2929.18(A)(1). Id. at ¶ 17. See, also, R.C. 2743.72(E).
 {¶ 56} Pursuant to the Bartholomew court's analysis, it does not appear that medical providers are included within the ambit of permissible third party payees under the current version of R.C. 2929.18(A)(1). The trial court thus erred in ordering restitution to be paid directly to Lainhart's medical providers. Accordingly, we must reverse the restitution order and remand the case for a new restitution hearing to determine the correct payee in *Page 16 
accordance with the current version of R.C. 2929.18(A)(1) andBartholomew.
 {¶ 57} Appellant's fifth assignment of error is overruled in part and sustained in part.
 {¶ 58} Appellant's conviction is affirmed. The portion of the sentencing order requiring appellant to pay restitution to Lainhart's medical providers is reversed and the restitution order is set aside. The court shall conduct a new restitution hearing in accordance with the current version of R.C. 2929.18(A)(1).
 {¶ 59} Judgment affirmed in part, reversed in part, and remanded.
WALSH, P.J., and POWELL, J., concur.
[1] Appellant testified that he told the 911 operator someone was trying to break into his house so the police would respond faster.
[2] At the commencement of trial, the court sought clarification on whether the defense was requesting an instruction on aggravated assault as a lesser included offense, which the court did not believe to be appropriate. The defense assured the court that it wished to utilize the serious provocation element of aggravated assault as an affirmative defense and was not seeking an instruction on aggravated assault as a lesser included offense. The state, while maintaining that the aggravated assault instruction was not warranted under the facts, clarified that the defense sought an "inferior degree instruction" rather than a lesser included instruction. See State v. Chambers, Butler App. No. CA2004-03-069, 2005-Ohio-1682, ¶ 7.
[3] In pertinent part, 2003 Sub. H.B. 52 amended R.C. 2929.18(A) as follows: "* * * Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following: (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.The If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. The order mayinclude a requirement that reimbursement be made to third parties foramounts paid to or on behalf of the victim or any survivor of the victimfor economic loss resulting from the offense. If reimbursement to thirdparties is required, the reimbursement shall be made to any governmentalagency to repay any amounts paid by the agency to or on behalf of thevictim or any survivor of the victim for economic loss resulting fromthe offense before any reimbursement is made to any person other than agovernmental agency. If no governmental agency incurred expenses foreconomic loss of the victim or any survivor of the victim resulting fromthe offense, the reimbursement shall be made to any personal other thana governmental agency to repay amounts paid by that person to or onbehalf of the victim or any survivor of the victim for economic loss ofthe victim resulting form the offense. The court shall not require anoffender to repay an insurance company for any amounts the company paidon behalf of the offender pursuant to a policy of insurance." *Page 1