OPINION
{¶ 1} Defendant-appellant, Michael Rice, appeals his conviction in the Butler County Court of Common Pleas for murder. We affirm appellant's conviction.
 {¶ 2} On March 9, 2002, Brenda Duncan ("Duncan"), a bartender at the Towne Pub in Hamilton, Ohio, observed an argument between Toni Upton ("Upton") and appellant. Upton and appellant were frequent patrons of the Towne Pub. Upton and appellant were dating. Upton had also been living with appellant and his mother for several months. However, Upton removed her belongings from appellant's trailer the previous day.
 {¶ 3} The argument at the Towne Pub ensued over Upton telling appellant that "it was over," and that she was moving out. Duncan asked Upton and appellant to separate so their arguing would not disturb the other Towne Pub patrons. Upton and appellant complied, however, sometime later Upton and appellant were arguing again. Upton again told appellant, "no, it's over," and "we can't keep doing this." Later in the evening, Upton and appellant seemed to be reconciling and, sometime between 8:00 and 9:00 p.m., Upton and appellant left the Towne Pub together.
 {¶ 4} Appellant returned to the Towne Pub at approximately 10:50 p.m. by himself. Other patrons in the Towne Pub noticed that appellant was wearing a black leather vest and white tennis shoes that he had not been wearing earlier. Appellant also appeared to be "cleaned up" as if he had just taken a shower. Appellant stayed at the Towne Pub until 12:30 a.m. when he left to catch a cab at the Classic Rock Café
 {¶ 5} Taxi driver James Lipps ("Lipps") testified that he was familiar with appellant because he would use his taxi service "at least twice or three times a week." Lipps testified that when he picked up appellant on March 10, 2002 he asked him "the same thing I always ask him, * * * how he and his old lady were getting along." Appellant replied that "he don't really know. He just got back from Michigan on a fishing trip." Appellant stated that "he went straight to the bar" from his fishing trip. When Lipps and appellant arrived at appellant's residence, appellant stated, "the bitch ain't here."
 {¶ 6} On March 10, 2002, Upton's body was found slumped over on the driver's side of her vehicle. Upton had been stabbed five times in the chest. The coroner determined that the cause of death was a stab wound inflicted just below her collarbone, which resulted in the partial laceration of a major artery. A knife "consistent with the murder weapon" was found in Upton's hand, however, there were no identifiable prints on the knife.
 {¶ 7} After Upton's death was discovered, Hamilton police proceeded to interview people who knew the victim. Appellant was interviewed and he stated that he was with Upton at the Towne Pub on March 9, 2002. He stated that he stayed at the bar all evening with Upton. When he got Upton to leave with him that night, he realized she was drunk. He told her she should take a cab. She got mad at him and threw him out of the car. He went back to the Towne Pub where he called a cab and asked to be picked up at the Classic Rock Café When he went back outside to walk to the Classic Rock Café, he saw Upton in her car pulling out of the parking lot with an unknown male in the passenger seat.
 {¶ 8} Hamilton Police interviewed Jeff Skinner. He informed the police that on March 8, 2002, he was drinking with appellant at the Wagon Wheel bar in New Miami. Skinner asked appellant where Upton was and appellant replied, "it don't matter because as soon as I find the bitch, I'm going to kill her."
 {¶ 9} Hamilton Police interviewed Lisa Hyde ("Hyde"). She informed the police that she had a conversation with appellant at the Towne Pub in January 2002. Appellant pulled out a knife and told Hyde that he "didn't have a problem with cutting anyone that fucked with him." When Hyde asked appellant where Upton was, appellant replied that when he found her he would "cut her fucking head off."
 {¶ 10} Hamilton police questioned appellant again. Due to inconsistencies in appellant's story, he was considered a suspect and he was read his Miranda rights. Appellant then modified his former statement. In his second statement, appellant told police that he and Upton left the Towne Pub and went to his residence so she could collect some of her belongings. He changed his clothes and combed his hair. He and Upton returned to the Towne Pub and they had an argument in her car. Upton accused him of cheating and hit him with her fists. He then hit her in the side of the head with his hand She "got very mad" and pulled out a knife, waved it in his face and tried to stab him. He grabbed her hand and pushed it down to keep the knife away from him. The knife could have possibly cut her at that time. However, he did not think she was injured. He then left her car, went back to the Towne Pub where he stayed until he called for a cab to pick him up at the Classic Rock Café After appellant gave his statement, he was placed under arrest for Upton's murder.
 {¶ 11} A videotape was obtained from the Classic Rock Café depicting appellant entering the bar on March 10, 2002, at 1:13 a.m. The video showed appellant wearing the black leather vest and white tennis shoes. Appellant's white tennis shoes were inspected and a spot of blood was found on the left shoe. The spot was subjected to DNA analysis which revealed that the spot contained a mixture of Upton's DNA profile and that of another person whose identity could not be determined. The black leather vest was inspected and bloodstains were found on the left side. The vest was subjected to DNA analysis and the blood matched Upton's DNA profile.
 {¶ 12} On April 10, 2002, appellant was indicted for murder. The matter was tried before a jury on December 16 and 19, 2002. Appellant was found guilty of murder as charged in the indictment. Appellant appeals the conviction raising three assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "The trial court erred to the prejudice of defendant-appellant when it permitted lisa hyde to testify."
 {¶ 15} Appellant argues that Hyde's testimony was "too remote in time to the events in question." Furthermore, appellant argues that "the prejudicial impact of her testimony would outweigh any probative value."
 {¶ 16} At trial, Hyde testified that approximately three months before the murder, she had a conversation with appellant at the Towne Pub. During the conversation, appellant pulled out a knife and told Hyde that he would not have a problem with cutting anyone that fucked with him. When Hyde asked appellant where Upton was, appellant replied that he would cut her fucking head off.
 {¶ 17} Upon hearing Hyde's testimony, appellant's counsel objected and moved for a mistrial. The trial court overruled the objection and the motion, stating that the testimony was material, relevant, and not remote because it demonstrated the lack of mistake. Appellant argues the decision was erroneous.
 {¶ 18} The trial court has "broad discretion in admission and exclusion of evidence and absent a clear abuse of discretion, a reviewing court will not disturb trial court's decision. Statev. Combs (1991), 62 Ohio St.3d 278, 284. A trial court does not abuse its discretion unless it acts arbitrarily, unreasonably, or unconscionably. State v. LaMar, 95 Ohio St.3d 181, 191,2002-Ohio-2128, at ¶ 40.
 {¶ 19} Evid.R. 404(B) states, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Threats made by an accused can constitute verbal acts in terms of Evid.R. 404(B). See State v. Kuhn (Aug. 23, 1993), Clermont App. No. CA93-01-007. Pursuant to Evid.R. 404(B), prior threats to commit a criminal act are admissible where they are directly related to proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and are close in time to the criminal act in question. State v. Sargent (1998),126 Ohio App.3d 557, 568.
 {¶ 20} Hyde's testimony indicates that appellant's statements consisting of threats to cut anyone that fucked with him and to cut Upton's head off were specifically directed toward Upton and occurred only a few months prior to Upton being found dead as a result of a stabbing. Appellant's statements were not too distant in time as to have no probative value because the statements reflected the type of conduct with which appellant was charged. Appellant's statements were also probative of whether the stabbing was accidental. Therefore, the trial court could have reasonably concluded that the statements were admissible pursuant to Evid.R. 404(B).
 {¶ 21} The trial court's decision to admit the evidence was not arbitrary, unreasonable, or unconscionable. Accordingly, appellant's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "The trial court erred to the prejudice of defendant-appellant when it refused to provide instructions to the jury regarding lesser included offenses."
 {¶ 24} Appellant maintains that his second statement to the police indicated that he might have stabbed the victim in self-defense. Therefore, appellant argues "it is erroneous to not instruct the jury on self-defense."
 {¶ 25} The Ohio Supreme Court in State v. Williford (1990),49 Ohio St.3d 247, set forth the law relating to self-defense. Under Ohio Law, self-defense is an affirmative defense. State v.Martin (1986), 21 Ohio St.3d 91. To establish self-defense, the defendant must show "* * * (1) [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger." Williford,49 Ohio St.3d at 249; State v. Robbins (1979),58 Ohio St.2d 74, syllabus. The defendant is privileged to use that force which is reasonably necessary to repel the attack. State v. McLeod (1948), 82 Ohio App. 155,157. If the defendant "fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." State v. Jackson
(1986), 22 Ohio St.3d 281, 284.
 {¶ 26} A trial court does not err in failing to instruct the jury on self-defense where the evidence is insufficient to support the instruction. State v. Palmer, 80 Ohio St.3d 543,1997-Ohio-312. In determining whether a defendant has introduced sufficient evidence to successfully raise the affirmative defense of self-defense, a reviewing court must evaluate the evidence, "which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." R.C.2901.05; State v. Melchior (1978), 56 Ohio St.2d 15.
 {¶ 27} The evidence establishes that Upton was stabbed in the chest five times. Appellant maintains that while he was arguing with Upton in her vehicle, she hit him with her fists. He hit her back so she pulled out a knife, waved it in his face, and attempted to stab him. He grabbed her hand and pushed it down to keep the knife away from him. Appellant maintains that the knife could have possibly cut her at that time.
 {¶ 28} A defendant is privileged to use that force which is reasonably necessary to repel the attack. However, even if appellant's version is believed, he has not demonstrated that the force reasonably necessary to repel Upton's alleged attack required stabbing her five times in the chest. Appellant has not established that such force was his only means of escape when he had the ability to simply exit Upton's vehicle when she pulled out a knife.
 {¶ 29} Consequently, appellant has failed to demonstrate that he acted in self-defense. See Jackson, 22 Ohio St.3d at 284. Accordingly, we conclude that the trial court did not abuse its discretion in failing to instruct the jury on self-defense.
 {¶ 30} Appellant also argues that "when a defendant kills a victim in a fit of rage because of serious provocation occasioned by the victim, it is erroneous to not instruct the jury on the offense of voluntary manslaughter."
 {¶ 31} Voluntary manslaughter is an inferior degree of murder, for "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements * * *." State v. Shane (1992), 63 Ohio St.3d 630, 632. Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought. Id. at 37.
 {¶ 32} The trial court should give an instruction on a lesser included offense only when the evidence warrants it. State v.Johnson (1988), 36 Ohio St.3d 224, 226. The trial court must charge the jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, at paragraph 2 of the syllabus.
 {¶ 33} For example, a trial court will give an instruction on the inferior degree offense of voluntary manslaughter in a murder trial only when the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another. See id. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense.Shane, 63 Ohio St.3d at 632-33.
 {¶ 34} R.C. 2903.03 sets forth, in pertinent part, "No person, while under the influence of sudden passion or in a sudden rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall cause the death of another." Before giving a voluntary manslaughter instruction in a murder case, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." Shane,63 Ohio St.3d at 635. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id; State v. Braden,98 Ohio St.3d 354, 2003-Ohio-1325.
 {¶ 35} In the instant case, appellant contends his assertion that he and Upton "had been arguing on and off all day," that Upton "was quite intoxicated," that she "began to hit him," and that she "pulled a knife out and held it to his face" forms the basis for an instruction on the lesser charge of voluntary manslaughter.
 {¶ 36} However, if insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. Shane, at 634. To determine whether the provocation was reasonably sufficient to incite the use of deadly force, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." State v. Deem (1988),40 Ohio St.3d 205, 211, quoting State v. Mabry (1982),5 Ohio App.3d 13, paragraph five of the syllabus.
 {¶ 37} We decline to hold that appellant's assertions that the victim "had been arguing" with him, she "was quite intoxicated," she "began to hit him," and that she "pulled a knife out" on him would have been sufficient to arouse the passions of an ordinary person beyond control. Considering appellant's emotional and mental state, and the conditions and circumstances that surrounded appellant at the time, the record lacks sufficient evidence of serious provocation.
 {¶ 38} The evidence revealed that Upton wanted to end her relationship with appellant. Upton moved out of appellant's residence. The day Upton moved out, Skinner testified that appellant stated, "as soon as I find the bitch, I'm going to kill her." Furthermore, Hyde testified that months before Upton's death, appellant stated he would "cut [Upton's] fucking head off."
 {¶ 39} The evidence reveals that the stabbing was not influenced by a sudden passion or a sudden rage brought on by serious provocation from the victim. Accordingly, we find no error in the trial court's denial of the requested voluntary manslaughter jury instruction.
 {¶ 40} Appellant also argues that "when there is evidence that the defendant's killing of another is not purposeful, but caused during the commission of a felony, it is erroneous for the trial court to refuse to instruct the jury on involuntary manslaughter."
 {¶ 41} The Ohio Supreme Court has held that involuntary manslaughter is a lesser included offense of murder. See Statev. Thomas (1988), 40 Ohio St.3d 213, 215, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89. Once a lesser included offense is identified, the court must then examine the facts and decide whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. State v. Kidder (1987), 32 Ohio St.3d 279, 280.
 {¶ 42} Even though involuntary manslaughter is a lesser included offense of murder, a criminal defendant is only entitled to such an instruction when the evidence warrants it. Id. That is, "a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Thomas, 40 Ohio St.3d at 216. In making this determination, "the court must view the evidence in the light most favorable to the defendant." State v. Smith,89 Ohio St.3d 323, 331, 2000-Ohio-166, citing State v. Wilkins
(1980), 64 Ohio St.2d 382, 388. However, "some evidence" for the lesser charge is not determinative; there must be sufficient evidence for the jury to reasonably reject the greater offense.State v. Shane, 63 Ohio St.3d at 632-33.
 {¶ 43} R.C. 2903.04(A) provides: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Appellant contends that he should have received an involuntary manslaughter instruction with felonious assault as the underlying felony. R.C.2903.11(A) states: "No person, shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."
 {¶ 44} In this case, the trial court properly exercised its discretion in concluding that no jury could reasonably conclude that the evidence in this case supports an acquittal on the murder charge and a conviction for involuntary manslaughter, with felonious assault as the underlying felony.
 {¶ 45} The physical evidence of the crime scene and the autopsy of the victim reveal that Upton was stabbed in the chest five times. However, it is appellant's contention that he might have accidentally cut the victim while attempting to keep her from stabbing him during a fight.
 {¶ 46} The coroner testified that the knife found on the scene, "consistent with the murder weapon," had a blade length of "three-and-a half inches." However, the fatal wound was four inches deep. The coroner testified that the extra "distance of one-half inch indicates that there has been some force applied." The coroner explained that "the body is compressible" and that allowed the knife to enter Upton's body an extra "one-half inch."
 {¶ 47} The coroner noted that enough force was applied to leave a hilt mark around the wound. The coroner also noted that Upton did not appear to have been resisting in a fight because there were no defensive wounds on her hands. Additionally, Upton's fingerprints were not found on the knife found on the scene and identified as "consistent with the murder weapon." No identifiable prints were found on the knife.
 {¶ 48} Appellant was videotaped the night of Upton's death wearing a black leather vest and white tennis shoes. Blood stains consistent with Upton's DNA were found on the left tennis shoe and the leather vest.
 {¶ 49} This Court cannot conclude that the trial court abused its discretion in finding that a jury could not reasonably find appellant innocent of murder and guilty of involuntary manslaughter. The trial court properly determined that evidence presented does not reasonably support both an acquittal on the murder charge and an involuntary manslaughter conviction. Therefore, the trial court did not err in denying the involuntary manslaughter instruction request. Consequently, appellant's second assignment of error is overruled.
 {¶ 50} Assignment of Error No. 3:
 {¶ 51} "The trial court erred to the prejudice of defendant-appellant when it allowed the state to engage in improper final arguments."
 {¶ 52} Appellant argues that the "prosecutor is not permitted during final arguments to appeal to the emotions of the jury and to convict based upon fear by exhorting them to not let the defendant get away with murder."
 {¶ 53} At the end of closing arguments, the prosecutor stated, "when you leave and those hallways are quiet, please let the air be filled with truth and justice. Please don't let this man get away with murder." Appellant's counsel objected to the comment and moved for a mistrial. The trial court overruled the objection and the motion. Appellant maintains that the rulings were erroneous.
 {¶ 54} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982),69 Ohio St.2d 583, 589. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments.State v. Maurer (1984), 15 Ohio St.3d 239, 269. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136,141, 1996-Ohio-227.
 {¶ 55} While we do not condone the prosecutor's comment, we believe that the jury would have nonetheless convicted appellant absent the prosecutor's comment. Accordingly, appellant's third assignment of error is overruled.
 {¶ 56} Judgment affirmed.
Valen, P.J., and Young, J., concur.