[Cite as *State v. Gomez*, 2013-Ohio-2856.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2012-07-129 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 7/1/2013 |
| - vs - | : | |
| | : | |
| ERIC NICOLAS GOMEZ, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-10-1789

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Eric Nicolas Gomez, appeals from his conviction in the Butler County Court of Common Pleas for one count of felonious assault. For the reasons outlined below, we affirm.

{¶ 2} During the early morning hours of September 11, 2011, an altercation occurred inside Club 513 located in Hamilton, Butler County, Ohio, between Gomez, Luis Geurrero-Mejias, Jorge Manuel Guerrero-Mejias, Luis' brother, as well as Jose Luis Corcino, Johelvel

David Robles de Jesus, Ernest Carvajal, Eddy Polanco, and Jason Lebron Mesa. The fight was apparently in retaliation for Johelvel's alleged affair with Jorge's girlfriend.

{¶ 3} During the ensuing melee, Luis is alleged to have picked up a nearby barstool when he began swinging it at Gomez and the other club patrons. However, instead of fleeing from the scene, Gomez testified that he discovered a machete on the floor as he was backing towards the door, picked it up, turned to face Luis, and began "defending" himself against the oncoming attack. As a result, the machete struck Luis severing his right index finger, thereby requiring it to be amputated. Gomez, however, did not suffer any injuries in the brawl.

{¶ 4} Gomez was subsequently charged with one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony. Gomez was later found guilty following a jury trial and sentenced to three years in prison. Gomez now appeals from his conviction, raising a single assignment of error for review.

{¶ 5} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION IN DECLINING TO INSTRUCT THE JURY ON SELF-DEFENSE AS AN AFFIRMATIVE DEFENSE.

{¶ 6} In his single assignment of error, Gomez argues the trial court erred by refusing his request to instruct the jury on the affirmative defense of self-defense. We disagree.

{¶ 7} "Jury instructions are matters left to the sound discretion of the trial court." *State v. Tucker*, 12th Dist. No. CA2010-10-263, 2012-Ohio-139, ¶ 23. This court reviews the trial court's decision refusing to provide the jury with a requested instruction for an abuse of discretion. *State v. Gray*, 12th Dist. No. CA2010-03-064, 2011-Ohio-666, ¶ 23, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 8} The burden of going forward with evidence of self-defense and the burden of proving self-defense by a preponderance of the evidence is upon the accused. *State v. Jones*, 12th Dist. No. CA2012-04-077, 2013-Ohio-654, ¶ 45. To establish self-defense in a case where a defendant used deadly force, such as the case here, "the defendant must prove: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force; and (3) he did not violate any duty to retreat or avoid the danger." *Gray*, 2011-Ohio-666, ¶ 43, citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. If a defendant fails to prove any one of these elements, he has failed to demonstrate he acted in self-defense. *State v. Voss*, 12th Dist. No. CA2006-11-132, 2008-Ohio-3889, ¶ 54; *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 72.

{¶ 9} A trial court does not err in failing to instruct the jury on self-defense where the evidence is insufficient to support the instruction. *State v. Rice*, 12th Dist. No. CA2003-01-015, 2004-Ohio-697, ¶ 26, citing *State v. Palmer*, 80 Ohio St.3d 543, 564 (1997). In turn, if the evidence brought forward generated only mere speculation of a self-defense claim, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury is unwarranted. *State v. Martin*, 12th Dist. Nos. CA2002-10-111, CA2002-10-115, CA2002-10-116, 2003-Ohio-6551, ¶ 9. In determining whether a defendant has introduced sufficient evidence to warrant a jury instruction on self-defense, "the test to be applied is whether the defendant has introduced evidence that, if believed, is sufficient to raise a question in the minds of reasonable persons concerning the existence of the offense." *State v. Ford*, 12th Dist. No. CA2009-01-039, 2009-Ohio-6046, ¶ 19.

{¶ 10} Initially, as did the trial court before us, we question whether the affirmative defense of self-defense applies to the case as bar. As this court has stated previously, "the

self-defense affirmative defense generally admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the [appellant] claims exempt [him] from liability." *State v. Zielinski*, 12th Dist. No. CA2010-12-121, 2011-Ohio-6535, ¶ 29, citing *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). In this case, however, Gomez specifically testified that he never even swung the machete at Luis. As Gomez testified through his interpreter:

> Q: And that's when you run into this machete on the floor?
>
> INTERPRETER: Yes.
>
> Q: You reach down and pick it up?
>
> INTERPRETER: Yes, sir.
>
> Q: And you said you used it to defend yourself?
>
> INTERPRETER: Yes, sir.
>
> Q: Holding it up like this?
>
> INTERPRETER: Yes.
>
> Q: You don't swing it though?
>
> INTERPRETER: No.

{¶ 11} Furthermore, we agree with the trial court's finding that Gomez never testified that "he struck a blow towards Luis because it was his only means of escaping this advance and he had to use the deadly force to avoid injury."

{¶ 12} "In asserting the affirmative defense of self-defense, the defendant cannot simply deny or contradict the evidence that has been presented by the State; rather, he must admit the prohibited conduct but assert surrounding facts and circumstances that justified engaging in the prohibited conduct." *State v. Densmore*, 3rd Dist. No. 7-08-04, 2009-Ohio-6870; *State v. Grubb*, 111 Ohio App.3d 227, 282 (2d Dist.1996). That is exactly what occurred here. Therefore, because Gomez never even admitted to the use of deadly force,

Gomez simply cannot now hide behind the affirmative defense of self-defense.

{¶ 13} Regardless, and even assuming that the affirmative defense of self-defense is applicable, which it is not, after a thorough review of the record, we find no error in the trial court's decision refusing to provide the jury with such instruction. Here, although Gomez claims that he did not have any other options than to use deadly force, the evidence presented clearly demonstrates otherwise. In fact, as Gomez testified through his interpreter:

> Q: Okay. Did you stand there and let him just wale on you with that barstool?
>
> INTERPRETER: No.
>
> Q: What did you do?
>
> INTERPRETER: I was backing off. He was going after me, and he was swinging the barstool at me.
>
> * * *
>
> INTERPRETER: Twice he tried to hit me with it, but he didn't hit me because I was backing off.
>
> Q: Okay. And when you were backing off, which door were you heading towards?
>
> INTERPRETER: To the front door that was behind me.

{¶ 14} However, instead of exiting out the front door, which Gomez explicitly admitted was unlocked thereby allowing for his safe exit, Gomez testified that he discovered a machete on the floor of the club, "and I grabbed it and tried to stop him." During this time, the machete struck Luis severing his right index finger.

{¶ 15} "To prove that the duty to retreat was not violated when deadly force was used, the defendant must show that no means of retreat or avoidance was available to him and that his only means of escape or avoidance was the deadly force he used." *State v. Dale*, 2d Dist. No. 2012 CA 20, 2013-Ohio-2229, ¶ 15. As the record indicates, Gomez failed to do so here. This is particularly true considering the extensive testimony from numerous witnesses

indicating they fled from the club out both the front and rear exits once the melee began.

{¶ 16} Based on the facts of this case, because Gomez could have simply exited the bar to avoid any further confrontation, we find no error in the trial court's decision refusing his request to instruct the jury on self-defense. *See, e.g., Tucker*, 2012-Ohio-139, ¶ 26 (trial court did not err in refusing to instruct jury on affirmative defense of self-defense where appellant had other means to diffuse situation and escape besides stabbing victim in the chest four times); *Rice*, 2004-Ohio-697 at ¶ 28 (trial court did not err in refusing to instruct jury on affirmative defense of self-defense where appellant failed to prove the use of "force was his only means of escape when he had the ability to simply exit Upton's vehicle when she pulled out a knife"). Accordingly, Gomez's single assignment of error is overruled.

{¶ 17} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.