[Cite as *State v. Rice*, 2016-Ohio-7185.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.   CA2016-03-005 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/3/2016 |
| - vs - | : | |
| | : | |
| CALEB RICE, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2015-2316

Jessica Little, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for plaintiff-appellee

Timothy Kelly, 108 South High Street, P.O. Box 467, Mt. Orab, Ohio 45154, for defendant-appellant

**M. POWELL, P.J.**

{¶ 1}  Defendant-appellant, Caleb Rice, appeals his convictions in the Brown County Court of Common Pleas for felonious assault and domestic violence.

{¶ 2}  DeLynn Finley lived by herself in an apartment in Ripley, Ohio.  Finley was acquainted with Rice.  In late September 2015, Rice asked Finley if his girlfriend, Ashleigh Thomas, could stay at Finley's apartment.  Finley agreed to let Thomas move in for a few

days.

{¶ 3} After Thomas moved in, Finley had a seizure and was hospitalized. When Finley returned home from the hospital in early October 2015, she found Rice and Thomas living in her apartment.

{¶ 4} Finley asked Rice and Thomas to leave, but they refused. Sometime later, Finley saw police drive by and had them remove Rice and Thomas. But the couple returned later that day and broke into the apartment.

{¶ 5} Finley claimed that over the next month she lived with Rice and Thomas as a quasi-captive. Rice threatened that if Finley contacted the police he would kill or injure her. Rice assaulted Finley numerous times. Thomas monitored Finley during the day while Rice was away. Finley claimed she was so intimidated by Rice that she was too scared to contact police.

{¶ 6} In late October 2015, Finley confronted Rice and asked him to leave. In response, Rice grabbed Finley by the hair and repeatedly slammed her head into a wall in the apartment. Finley did not report the assault to police or seek medical attention.

{¶ 7} On the morning of November 8, 2015, Rice attacked Thomas in the apartment. Thomas fled. A neighbor who encountered Thomas called 9-1-1. A Ripley police officer responded and observed Thomas crying and hysterical. Thomas told the police officer that Rice assaulted her. Later, Finley told the police officer that Rice had assaulted her as well.

{¶ 8} A Brown County grand jury indicted Rice for two counts of felonious assault, one for Finley and one for Thomas, and two counts of domestic violence, one count for each as well. The court held a plea hearing about a month before trial. The state offered a prison term of five years in return for Rice's agreement to plead guilty to two felony domestic violence charges. Rice failed to respond to a question from the court while it conducted its

plea colloquy.  The court recessed the hearing and set the matter for trial.

{¶ 9}  Before trial the state dismissed the domestic violence count with respect to Finley.  The state tried the remaining counts by jury, who found Rice: (1) guilty of domestic violence against Thomas; (2) guilty of felonious assault against Finley; and (3) not guilty of felonious assault against Thomas.

{¶ 10} The court imposed an aggregate sentence of 13 years in prison.  On appeal, Rice raises three assignments of error for our review.

{¶ 11} Assignment of Error No. 1.

{¶ 12} THE TRIAL COURT ERRED BY TERMINATING APPELLANT'S PLEA HEARING AND ORDERING THAT THE MATTER PROCEED TO TRIAL.

{¶ 13} Rice argues that the court abused its discretion by terminating his plea hearing.  Rice contends he wished to enter into the plea agreement but the court abruptly ended the hearing without asking him additional questions to determine the voluntariness of his plea.

{¶ 14} Crim. R. 11(C)(2) provides that a court "may" refuse to accept a plea of guilty in felony cases.  It is well established that a trial judge has discretion in whether to accept or reject a plea. *State v. Russell*, 12th Dist. Butler No. CA91-03-053, 1991 WL 219603, *2 (Oct. 28, 1991).  While the decision to accept or reject a plea is discretionary, Crim. R. 11(C)(2)(a) requires the trial court to determine that a defendant is entering his or her plea "voluntarily" before accepting it.

{¶ 15} We have reviewed the record of the plea hearing and conclude that the trial court did not abuse its discretion in recessing the hearing and setting the matter for trial. The record reflects that the trial court was concerned about Rice's voluntariness in entering the plea.  Among other comments, the court stated: "I'm really concerned.  I don't think you wanna do this.  And nobody does anything in this courtroom, they don't wanna do, by way

- 3 -

of plea. Do you wanna do this or not?"

{¶ 16} Rice indicated he was ready to proceed. But later in the hearing the state read facts into the record related to the domestic violence count against Finley. The court asked Rice if he had any comment on the facts as read. Rice failed to respond. The court then adjourned the hearing.

{¶ 17} The trial court was in a better position to observe Rice's demeanor at the plea hearing and to determine whether he was prepared to enter a plea. The refusal to respond to a question from the trial court during the plea colloquy indicates that Rice was uninterested in pleading. Notably, neither the state or Rice's counsel objected when the trial court announced it was recessing the plea hearing and setting the matter for trial.

{¶ 18} Rice argues that his failure to answer may have been caused by the court calling him an incorrect surname. During the plea hearing, the trial court repeatedly referred to Rice by the last name "Blevins." Rice informed the court that his name was not Blevins, but the court continued mistakenly calling him Blevins. However, the record is clear that Rice knew that the court was addressing him. Accordingly, Rice's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2.

{¶ 20} A CONVICTION OF FELONIOUS ASSAULT UNDER OHIO REVISED CODE SECTION 2903.11(A)(1) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND INSUFFICIENT TO SUPPORT A CONVICTION.

{¶ 21} Rice argues that his conviction for felonious assault against Finley is not supported by sufficient evidence and is against the manifest weight of the evidence. He contends that the evidence did not support a finding that he inflicted "serious physical harm" on Finley. And he argues that Finley's testimony was not credible, because she did not report the attack or seek medical attention.

- 4 -

{¶ 22} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 17.

{¶ 23} In determining whether a judgment is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 24} The jury found Rice guilty of felonious assault, a violation of R.C. 2903.11(A)(1), which prohibits causing "serious physical harm" to another. The Revised Code defines "serious physical harm" as (in pertinent part): "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(d) and (e).

{¶ 25} Finley testified that Rice grabbed her by the hair and repeatedly slammed her head against a wall in her apartment. The attack was so forceful it created a hole. Rice also ripped out a "handful" of Finley's hair, "roots and all." Finley described the attack as "extremely painful," and that she experienced pain for two weeks after the attack. Finley

- 5 -

also testified that she has a permanent bald spot on her head where Rice ripped out her hair.

{¶ 26} We find that these facts constitute sufficient evidence of serious physical harm. *See, e.g., State v. Robbins*, 12th Dist. Warren No. CA86-06-033, 1987 WL 13701, *2 (June 29, 1987) (victim's hair pulled from head while thrust around the room); *State v. Frank*, 12th Dist. Clermont No. CA93-09-065, 1994 WL 178449, *4 (May 9, 1994) (victim's head deliberately rammed against wall several times).

{¶ 27} Next, Rice argues that his conviction for felonious assault was against the manifest weight of the evidence because Finley's testimony was not credible. Rice argues that Finley's testimony was unbelievable because she never contacted police to report her allegations of Rice's violent acts or sought medical attention. Rice also argues that Finley's testimony was inconsistent as to whether Rice lived at her apartment.

{¶ 28} With respect to credibility determinations, we defer to the fact-finder. *State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 46. The jury found Finley credible, and we will not second guess its judgment in the absence of evidence strongly suggesting that the jury "lost its way." *Id.* at ¶ 45.

{¶ 29} The evidence at trial corroborated Finley's testimony that Rice repeatedly slammed her head into a wall and, in doing so, ripped hair off of her head. The state introduced a photograph of Finley's head, depicting the bald spot. A police officer testified that the hole in the wall was freshly plastered and still wet to the touch when he observed it in Finley's apartment on November 8, 2015. The state called Michael Gilbert, who testified that Rice asked him to repair the hole and told him that he put Finley's head through it. Gilbert could not recall when he made the repair, but when told that the police officer testified that the plaster was wet on November 8, estimated he made the repair on November 6. Finally, the state introduced a letter that Rice wrote to Gilbert. In the letter,

- 6 -

Rice asked Gilbert to testify that the hole in the wall occurred much earlier than late October or early November 2015.

{¶ 30} Rice claims that Finley's testimony was inconsistent as to whether he lived at her apartment or not, however we find no inconsistencies in her testimony. Finley testified that Rice did not live at her apartment before her hospitalization, but had moved in by the time she returned home. While Finley's decision not to seek medical attention or report Rice's attack could weigh on her credibility, she explained that she was too fearful of Rice to contact police. She did not explain the failure to seek medical attention, but that was a matter for the jury to consider in their deliberations.

{¶ 31} After carefully reviewing the record, we find that there was sufficient evidence to support Rice's conviction for felonious assault. Further, we do not find that the jury lost its way or created such a manifest miscarriage of justice that his conviction must be reversed and a new trial ordered. Consequently, Rice's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3.

{¶ 33} THE TRIAL COURT ERRED BY ALLOWING OFFICER HERREN TO TESTIFY AS TO WHAT ASHLEIGH THOMAS HAD SAID TO HIM, SINCE SHE WAS NOT PRESENT IN COURT.

{¶ 34} Thomas did not testify at trial, and Rice contends that the trial court erred by allowing the police officer to testify that Thomas identified Rice as her attacker. The trial court admitted Thomas' hearsay statement under the "excited utterance" exception. Rice argues that sufficient time had passed between the attack and the time of Thomas' statement such that it was not made because of the excitement of the situation.

{¶ 35} The trial court has broad discretion in the admission or exclusion of evidence. *State v. Rice*, 12th Dist. Butler No. CA2003-01-015, 2004-Ohio-697, ¶ 18. To reverse, an

appellate court must conclude that the trial court abused its discretion. *Id.* An abuse of discretion occurs when the trial court acts arbitrarily, unreasonably, or unconscionably. *Id.*

{¶ 36} Evid.R. 803(2) provides a hearsay exception for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The controlling factor in analyzing whether a statement is an excited utterance is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *State v. Knecht*, 12th Dist. Warren No. CA2015-04-037, 2015-Ohio-4316, ¶ 27. In *Knecht*, this court concluded that the trial court properly admitted hearsay statements where two police officers testified that a domestic violence victim was "crying, very upset, emotional, distraught" when they first spoke with her. *Id.* at ¶ 28. The police also observed injuries on the victim's head and face. *Id.* at ¶ 5.

{¶ 37} We conclude that the trial court did not abuse its discretion in allowing the police officer to testify as to Thomas' hearsay statements inculpating Rice. The evidence established that Thomas fled from Finley's apartment to a nearby apartment building immediately after Rice attacked her. A resident of that apartment building then called 9-1-1, who dispatched the police. The police officer arrived on scene two minutes after being dispatched. The officer contacted Thomas within five minutes of arriving on scene. When he approached Thomas and she began explaining what happened, the officer noted that she was crying, hysterical, holding her chest "repeatedly," holding a towel to her face, had red marks on her face, and had urinated on herself. We conclude these facts show circumstances demonstrating that Thomas' statements resulted from impulse and the stress of the situation and not reason and reflection.

{¶ 38} Accordingly, we find no abuse of discretion in the court's decision to admit the hearsay statement. Rice's third assignment is therefore overruled.

**{¶ 39}** Judgment affirmed.


HENDRICKSON and PIPER, JJ., concur.