[Cite as *State v. Jackson*, 2015-Ohio-478.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-12-227 |
| | : | O P I N I O N |
| - vs - | | 2/9/2015 |
| | : | |
| DELORES JACKSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-06-0961

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Brandabur & Bowling Co., L.P.A., Jeffrey W. Bowling, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}  Defendant-appellant, Delores Jackson, appeals her conviction in the Butler County Court of Common Pleas for murder.  For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2}  On June 14, 2013, appellant, Diana Ray, Ray's sister, Dorothy "Dot" Allen, and Deborah Cook were sitting at a table under the carport at Dot's residence in Hamilton, Ohio.

They were soon joined by Sylvester Sinkfield and Shawn Brandon. Brandon has known appellant for all of his life and calls her "Ms. DeeDee." Brandon sat down at the table between Ray and appellant. Ray and appellant already had been arguing that day as they often had done in the past. At the time of the incident, appellant was 72 years old and Ray was 56 years old. Ray, who had been drinking beer, whispered into Brandon's ear, "I'm going to whoop that old bitch's ass." Appellant asked Brandon, "What she say, Shawn?" Brandon replied, "I don't know, Ms. DeeDee. Nothing." Appellant then told him, "Watch this." Brandon, becoming alarmed, told appellant that she "need[ed] to go home[,]" and advised her to "[g]o home, Ms. DeeDee." Once he said this, appellant gave Brandon a look that "shook [him] up." Brandon then said, "Oh, I'm not going to watch anything," and went into Dot's residence to get Dot's husband, Michael "Mick" Allen.

{¶ 3} After Brandon left to get Mick, appellant and Ray began "tussling" or "wrestling" with each other, going from one side of the table to the other, holding on to each other's arms and hitting each other with open hands but not fists. During the altercation, Cook called out, "Let them fight." Dot would later testify that she saw appellant "hit [Ray] in the chest" and heard Ray say to appellant, "You tased me." Dot saw Ray walk over to a chair, sit down, and then slide out of the chair and onto the ground. Sinkfield would later testify that he saw appellant and Ray "swinging at each other" with open hands but not fists, and that on the second swing, he heard Ray say to appellant, "Bitch, you hurt me. You stunned me with a stun gun." Sinkfield testified that he caught Ray by the waist as she was falling and placed her on the chair, and having gotten a handful of blood in doing so, told her that appellant had not shot her with a stun gun, but had stabbed her instead; he then saw Ray slide onto the ground. Brandon came out of the house with Mick less than a minute after he had went inside to get him, and they both saw Ray lying unconscious on the cement patio. Several persons there called 911.

{¶ 4} After stabbing Ray, appellant retrieved her knife, which was hanging from Ray's shirt, and took off and went to her home down the street. Once there, appellant removed her bloody shirt and put on a clean one and hid the knife that she had used to stab Ray in her dresser drawer and then grabbed another knife. When police arrived at her home, appellant came out with the knife she had just grabbed in her hand. Appellant told police she was "tired of them jumping on me, I did it." She also told police she got the knife from her fanny pack that she wore that day. The police did not observe any marks, scrapes, bleeding or injuries to appellant. The police obtained a search warrant and found the knife that appellant had used to stab Ray in the master bedroom.

{¶ 5} Forensic testing found blood on the knife and DNA samples found on the knife's blade and handle were consistent with appellant's and the victim's DNA. At the time of her death, Ray had a blood-alcohol level of .296. Ray's autopsy revealed she was stabbed two times — once in the medial lower aspect of her left breast about one-half inch in diameter that cut the left ventricle, while the other was a nonpenetrating wound in the left flank. The blade on the knife that appellant used to stab Ray was three inches long and one-half inch in diameter, which matched the dimensions of Ray's stab wounds.

{¶ 6} Appellant was indicted for murder, an unclassified felony, in violation of R.C. 2903.02(B) and tampering with evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1). At trial, the state presented a number of witnesses, including Cook, Brandon, Sinkfield and Dot, who testified to the facts related above. Appellant, testifying on her own behalf, stated that Ray jumped on her during their altercation, causing her to hit the back of her head on the cement patio, and that Ray kicked her a couple of times and "kneed" her when she was on the ground. Appellant testified that she "didn't know nothing" about the stab wound to Ray's heart. Appellant testified that she carries the knife in her fanny pack and that she generally has the knife out on top of the fanny pack to protect herself in her

neighborhood. Appellant testified that she was trying to get the knife out of the way so that it did not injure herself or Ray, but that Ray "came across at [her] so fast."

{¶ 7} The trial court initially informed the parties that it intended to instruct the jury on the lesser included offenses of involuntary manslaughter and negligence homicide in addition to the charged principal offense of murder. Both the state and the defense requested that the trial court not instruct the jury on either of the lesser included offenses. The trial court ultimately agreed not to instruct the jury on the offense of negligent homicide, but did instruct the jury on the lesser included offense of involuntary manslaughter in addition to murder.

{¶ 8} The jury convicted appellant of murder and tampering with evidence. The trial court sentenced appellant to serve 15 years to life for her murder conviction and three years for her tampering-with-evidence conviction, and ordered her to serve the two prison terms concurrently.

{¶ 9} Appellant now appeals, assigning the following as error:

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE JURY'S VERDICT AS TO SELF DEFENSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTS A FINDING OF INVOLUNTARY MANSLAUGHTER OR NEGLIGENT HOMICIDE.

{¶ 14} Assignment of Error No. 3:

{¶ 15} THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY AS TO THE DEFINITION OF RECKLESS AND THE DEFINITION OF NEGLIGENT.

{¶ 16} In her first assignment of error, appellant argues the jury's decision to reject her self-defense claim was against the manifest weight of the evidence, because she established

all of the required elements of that defense. Appellant points out that she was 72 years old at the time of the incident, and contends that at this age, any type of physical assault carries an imminent danger of death or great bodily harm. She also contends that the argument between her and Ray turned into a fight very quickly, and therefore she had no opportunity to retreat; that no one came to her defense; and that at least one witness to the altercation was provoking her and Ray to fight.

{¶ 17} "A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Hensley*, 12th Dist. Warren No. CA2014-01-011, 2014-Ohio-5012, ¶ 10. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Chasteen*, 12th Dist. Butler No. CA2013-12-223, 2014-Ohio-4622, ¶ 10. As a result, a conviction will be overturned for being against the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Little*, 12th Dist. Butler No. CA2014-01-020, 2014-Ohio-4756, ¶ 11.

{¶ 18} To establish the affirmative defense of self-defense in a case where the defendant has used deadly force, the defendant must prove by a preponderance of the evidence that he or she (1) was not at fault in creating the situation giving rise to the affray, (2) had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force, and (3) did not violate any duty to retreat or avoid danger. *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). If the defendant fails to prove any one of these elements by a

preponderance of the evidence, then the defendant has failed to demonstrate that he or she has acted in self-defense. *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶ 19} "A person is privileged to use only that force that is reasonably necessary to repel the attack, and in most circumstances, may not kill in self-defense if he [or she] has available a reasonable means of retreat from the confrontation." *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, ¶ 19 (4th Dist.), citing, among others, *State v. Williford*, 49 Ohio St.3d, 247, 249-250; and *Jackson* at 283-284. When a defendant raises the affirmative defense of self-defense, the defendant is not permitted simply to deny or contradict the evidence presented by the state; instead, the defendant "'must admit the prohibited conduct but assert surrounding facts and circumstances that justified engaging in the prohibited conduct.'" *State v. Gomez*, 12th Dist. Butler No. CA2012-07-129, 2013-Ohio-2856, ¶ 12, quoting *State v. Densmore*, 3d Dist. Henry No. 7-08-04, 2009-Ohio-6870, ¶ 24.

{¶ 20} Here, as the state points out, appellant failed to admit at trial that she stabbed Ray or anyone else for that matter with the knife, and instead, merely testified that she was trying to get the knife out of the way so it would not harm anyone. Appellant testified at trial that when she and Ray were arguing, Ray physically jumped on her, knocking her to the ground, and that Ray's sister, Dot, got Ray off of her. Appellant's defense counsel then questioned her on direct examination as follows:

> Q. What happened when you hit the ground?
>
> A. I really couldn't tell you what happened when I hit the ground. I was trying to get – I knew the knife was on top of my fanny pack. And I was trying to get the knife – make sure that the knife didn't injury [sic] me or her. I was trying to get it out from in there, but she came across at me so fast.
>
> Q. Okay. And what did you do with the knife when you were on the ground?
>
> A. I was trying to get – I was trying to move the knife.

Q. Okay. Where did the knife go from there?

A. In [Ray's] body.

Q. How did it go into [Ray's] body?

A. I do not know. And the only way that I know that it went in [Ray's] body because when Dot pulled her up off of me, that's when I seen [sic] it.

{¶ 21} It is clear from appellant's testimony that what she was actually arguing was that Ray was *accidentally* stabbed. However, in so arguing, appellant is denying that she willfully and intentionally used deadly force against Ray in order to protect herself against death or great bodily harm from her.

{¶ 22} Additionally, there was ample evidence presented in this case to allow the jury reasonably to find that appellant failed to establish by a preponderance of the evidence that she believed death was imminent or that she would sustain great bodily harm and that her only means of escape from this danger was use of deadly force. The evidence showed that this was a heated confrontation between two persons who had often argued in the past. Appellant was permitted to use only such force as was necessary to repel Ray's attacks on her. However, the evidence showed that shortly after the incident, appellant did not have any marks, bruises or scrapes on her person. In light of the foregoing, a review of the evidence presented shows that the jury's determination that appellant failed to present sufficient evidence to establish, by a preponderance of the evidence, the affirmative defense of self-defense was not contrary to the manifest weight of the evidence.

{¶ 23} Therefore, appellant's first assignment of error is overruled.

{¶ 24} In her second assignment of error, appellant argues the manifest weight of the evidence presented at trial shows that she acted either "negligently" or "recklessly" in stabbing the victim but not "knowingly," and therefore the jury's verdict finding her guilty of murder under R.C. 2903.02(B) is contrary to the manifest weight of the evidence. We find

this argument unpersuasive.

{¶ 25} The offense of murder is defined in R.C. 2903.02(B), which prohibits any person from causing "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code." The "offense of violence" that appellant committed or attempted to commit was felonious assault in violation of R.C. 2903.11(A), which prohibits any person from "knowingly" "(1) [c]aus[ing] serious physical harm to another" or "(2) [c]aus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon[.]"

{¶ 26} R.C. 2901.22, which defines culpable mental states, provides in relevant part:

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with conscious purpose to avoid learning the fact.

(C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

(D) A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist.

{¶ 27} A review of the evidence presented at trial demonstrates that the jury's determination that appellant "knowingly" caused serious physical harm to Ray when she stabbed her, *or* "knowingly" caused or attempted to cause physical harm to Ray by means of a deadly weapon when she stabbed her, was not against the manifest weight of the evidence. Appellant told Brandon to "watch this," moments before she fatally stabbed Ray. Brandon, who has known appellant all of his life, tried to plead with appellant to go home, but when he did so, appellant gave him a look that "shook [him] up." Brandon went inside Dot's house to get Dot's husband, Mike, because he interpreted appellant's look to mean that "things were about to get ugly[,]" which, of course, they did. Appellant stabbed Ray directly in the heart, burying the blade all the way into Ray's chest, removed the knife hanging from Ray's clothing, left the scene with the weapon and retreated to her home, wiped the blood off the knife and hid it, threw her bloody clothes away, and tried to trick the police by coming out of her home with a different knife before she finally admitted to them that she stabbed Ray. Appellant's conduct clearly demonstrated that she acted "knowingly" when she fatally stabbed Ray.

{¶ 28} In light of the foregoing, appellant's second assignment of error is overruled.

{¶ 29} In her third assignment of error, appellant argues the trial court committed plain error by failing to instruct the jury on the definitions of "reckless" and "negligent." Appellant contends that "[h]ad the jury been advised of these definitions, the jury could have intelligently contemplated the legal culpability and mens rea necessary to commit the crime of murder" as opposed to the crimes of involuntary manslaughter or negligent homicide.

{¶ 30} Contrary to what appellant contends, the record shows that the trial court *did* provide the jury with the definition of "recklessly" when it instructed the jury on the lesser included offense of involuntary manslaughter. The trial court did not provide the jury with a definition of "negligent" or "negligently." However, appellant did not ask the trial court to

instruct the jury on the definition of negligent or negligently, nor did she object to the trial court's failure to include such definition in its instructions to the jury. Indeed, a negligent-homicide instruction was removed from the jury instructions at the request of appellant's trial counsel, who strategically asked that the jury be provided with an instruction on self-defense, alone.

{¶ 31} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error constitutes "plain error" under Crim.R. 52(B), only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 32} Providing the jury with the definition of negligent or negligently would not have clearly affected the outcome of this trial. Among other things, the evidence shows that appellant acted knowingly, rather than just recklessly or negligently, in stabbing the victim as appellant told Brandon to "watch this" moments before she stabbed Ray directly in the heart. Additionally, in defining the term "knowingly" in its instructions to the jury, the trial court, over the state's objection but with the approval of appellant's trial counsel, included language stating that "[e]vidence of mistake, accident, lack of information, or other innocent reason negates the existence of knowledge." In her testimony at trial, appellant essentially tried to argue that Ray's stabbing was an accident and she expressly stated that she did not intend to kill anyone.

{¶ 33} The jury clearly rejected appellant's claims of self-defense and accident, the evidence amply supported the jury's verdict and the jury's verdict was not contrary to the manifest weight of the evidence, and defining the term "negligent" or "negligently" for the jury

would not have clearly changed the outcome of appellant's trial.

{¶ 34} Accordingly, appellant's third assignment of error is overruled.

{¶ 35} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.