[Cite as *State v. Brooks*, 2020-Ohio-3134.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                       |
|--------------------------|---|-------------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.      |
|                          | : | Hon. Craig R. Baldwin, J.     |
| Plaintiff-Appellee       | : | Hon. Earle E. Wise, J.        |
|                          | : |                               |
| -vs-                     | : |                               |
|                          | : | Case No. 2019CA0064           |
| HILLARY CHANTEL          | : |                               |
| KAYLA BROOKS             | : |                               |
|                          | : | OPINION                       |
| Defendant-Appellant      |   |                               |

CHARACTER OF PROCEEDING:    Criminal Appeal from the Richland County
                            Court of Common Pleas, Case No.
                            2018CR557

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     May 28, 2020

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOSEPH SNYDER                           JOHN O'DONNELL, III.
Richland County Prosecutor's Office     10 West Newlon Place
38 South Park Street                    Mansfield, OH 44902
Mansfield, OH  44902

*Gwin, P.J.*

{¶1} Defendant-appellant Hillary Chantel Kayla Brooks ["Hillary"] appeals her convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} In June of 2017, K.L. and M.G. were living with their eight-month old son in an apartment complex in Mansfield, Ohio. Hillary, also known as "Kayla," and her mother, Tracy Crawford, lived across the hall from the couple. 2 JT. at 427-428[1]. Calvin Brooks, also known as "J.C.", Brittnianna Walker, also known as "Bri", and Rashaud Morton-Bonham, were frequent visitors to Hillary's apartment. 2 JT. at 338; 425; 427; 430.

{¶3} K.L. first met Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham in April, 2017. At some point, Hillary, Brooks, Walker, and Morton-Bonham started bullying K.L., so she stopped having contact with them. They would throw things at her head and call her "retarded" as well as other mean-spirited names. However, M.G., who admitted that he had a "crush" on Hillary, continued to associate with the group.

{¶4} On June 30, 2017, M.G. went to visit with Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham. M.G.'s mother gave him and Mr. Brooks a ride to Kroger's to buy a bottle of vodka. Once they returned to Hillary's apartment, M.G., Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham began drinking and smoking marijuana. During this time Hillary expressed to the group her desire to fight K.L. M.G. did not want to be involved with this kind of talk. M.G. took his bottle of vodka and went back to his

---

[1] For clarity sake, the transcript of the jury trial will be referred to by volume and page number as "JT."

apartment. Mr. Brooks and Mr. Morton-Bonham told M.G. as he was trying to leave Hillary's apartment that if M.G. tried to stop them from fighting K.L. they would come after M.G.

{¶5} M.G. went into the apartment where he stayed with K.L. and tried to close the door; however, Mr. Brooks and Mr. Morton-Bonham began to force their way inside the apartment. M.G. tried to push the door closed but Mr. Brooks and Mr. Morton-Bonham were able to get the door open wide enough for the pair to enter the apartment and begin assaulting M.G. While Mr. Brooks and Mr. Morton-Bonham were assaulting M.G., Hillary and Ms. Walker pushed the door open and entered the apartment. 2JT. at 282.

{¶6} K.L. demanded to know why they were attacking M.G. She was told to stay out of it. When K.L. persisted, Hillary and Ms. Walker began assaulting K.L. Eventually, Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham all left the apartment. K.L. was able to get up and lock the front door and then helped M.G. into the shower because he was covered in blood. Because she did not have minutes on her pre-paid cellular phone, K.L. believed that she could not call 9-1-1. However, K.L. did set up her phone to start an audio recording of the events that followed.

{¶7} Shortly thereafter, Hillary and Ms. Walker returned to K.L.'s apartment. Hillary told K.L. that she thought she had left her phone in K.L.'s apartment and wanted to come inside to look for it. K.L. asked if they were going to hit her again. K.L. allowed Hillary and Ms. Walker back into her apartment. Almost immediately, the pair began antagonizing K.L. in an attempt to get her to fight them. Mr. Brooks and Mr. Morton-Bonham also entered the apartment.

{¶8} As M.G. attempted to leave the apartment, Mr. Brooks and Mr. Morton-Bonham began kicking him. M.G. made it to the door of another apartment in an attempt to escape his attackers before coming back to his apartment. However, Mr. Brooks and Mr. Morton-Bonham attempted to force entry into the apartment. K.L. and M.G. tried to keep the door closed but the hinges on the door broke off and the door struck M.G. Mr. Brooks and Mr. Morton-Bonham then entered the apartment and began assaulting M.G. Hillary and Ms. Walker also came back inside the apartment. K.L. ran and grabbed her eight-month old son, but Hillary and Ms. Walker started attacking her again. Hillary struck K.L. 2JT. at 301; 313; 328. In addition to striking her, they also slammed her head off of her kitchen countertop. While K.L. was being assaulted, Hillary demanded that she fight back. Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham then left and the police eventually arrived.

{¶9} While the second assault was ongoing, R.B., a downstairs neighbor, heard something hit the floor hard above her. She also heard yelling. The impact was hard enough to cause everything on R.B.'s wall to shake. R.B. went upstairs and saw the door to K.L.'s apartment was not attached to the door frame. When she looked into the apartment, she saw M.G. on the ground while Mr. Brooks and Mr. Morton-Bonham took turns punching him. She also saw Hillary and Ms. Walker putting their fists up and threatening K.L. R.B. left and texted her cousin who is a police officer. R.B.'s cousin then called local police.

{¶10} R.B. went outside of the apartment building and saw Hillary and Ms. Walker's mother, known as "Mama T," comes towards the apartment building. R.B. told "Mama T" that the police were on their way. Approximately ten to fifteen minutes later,

R.B. saw Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham all exit the apartment building. R.B. was unsure who said it, but one of the group said, "Hurry up. They're coming."

{¶11} When the officers arrived, they were unable to locate Hillary, Mr. Brooks, Ms. Walker, or Mr. Morton-Bonham. K.L. and M.G. were shown photo arrays of the suspects and both of them identified Hillary, Mr. Brooks, Ms. Walker, and Mr. Morton-Bonham as their assailants.

{¶12} As a result of the assaults, K.L. was diagnosed with post-traumatic stress disorder ["PTSD"]. K.L. has great difficulty being in public with other people. The state introduced pictures of K.L.'s injuries. State's Exhibit's 10 – 24; 29. K.L.'s injuries included small cuts to her bottom lip, red marks to her left ear and face, red marks to her right arm, swelling to the left side of K.L.'s face, swelling of her forehead, blood in her nostrils and small cuts and blood on both of her lips. 3JT. at 563-565.

{¶13} M.G.'s injuries included a subdural hemorrhage, broken nose, broken jaw, and lacerations. After the assault, M.G. had a visible shoe print on his arm from where he was stomped. M.G. spent three days in intensive care. He also received bruising to his chest, back, and face. Due to M.G.'s injuries, he will require reconstructive surgery to repair his nose.

{¶14} At the conclusion of the evidence, the jury found Hillary guilty of two counts of Aggravated Burglary in violation of R.C. 2911.11(A)(1), felonies of the first-degree, and one count of Assault in violation of R.C. 2903.13(A), a misdemeanor of the first-degree. The trial judge sentenced Hillary to seven years on Count One, seven years on Count Two, and six months on Count Three. The sentences on Counts One and Two were

ordered to be served consecutively and the sentence on Count Three was to be served concurrently.

*Assignments of Error*

{¶15}  Hillary raises two Assignments of Error.

{¶16}  "I. DEFENDANT/APPELLANT'S CONVICTION FOR TWO (2) COUNTS OF AGGRAVATED BURGLARY WAS CONTRARY TO THE WEIGHT OF THE EVIDENCE.

{¶17}  "II. THE TRIAL COURT'S SENTENCE OF CONSECUTIVE SENTENCES IS NOT SUPPORTED BY THE EVIDENCE."

I.

{¶18}  In her First Assignment of Error, Hillary argues that her convictions for Aggravated Burglary are against the manifest weight of the evidence[2]. However, Hillary also claims in her brief that there is insufficient evidence to support her convictions for two counts of Aggravated Burglary. [Appellant's Brief at 4-6].

1. Standard of Appellate Review.

  1.1 Sufficiency of the Evidence

{¶19}  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker,* 150 Ohio St.3d 409,

---

[2] Hillary does not challenge her Assault conviction.

2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶20} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

1.1.1 Issue for Appeal.

1.1.2 *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Hillary's guilt on each element of the crimes for which she was convicted beyond a reasonable doubt.*

**{¶21}** To be convicted of Aggravated Burglary the trier of fact has to find beyond a reasonable doubt that Hillary trespassed in an occupied structure when another person was present, with purpose to commit in the structure any criminal offense, and Hillary inflicted, or attempted or threatened to inflict physical harm on another. R.C. 2911.11(A)(1). R.C. 2901.01 states, in relevant part: "(3) 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶22}** We would note that, even if Hillary may have had consent to enter K.L.'s home, once she committed an act of violence against K.L., the consent was revoked and Hillary became a trespasser. *See State v. Cutts*, 5th Dist.  Stark No.2008 CA 000079, 2009–Ohio–3563, ¶181. Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser and can be culpable for aggravated burglary. *See, e.g., State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383(1987).

**{¶23}** In the case at bar, Hillary has not challenged her conviction for assault. Therefore, Hillary concedes that she caused physical harm to K.L. *See, Bill of Particulars Notice of Intent to Use Evidence,* filed June 25, 2019. [Docket No. 29].  K.L. testified that Hillary and Bri pushed the apartment door open and entered her apartment.  2JT. at 282. K.L. also testified that after Mr. Brooks and Mr. Morton-Bonham had broken the front door of K.L.'s apartment off its hinges, Hillary entered K.L.'s apartment.  2JT. at 288. Further, Hillary returned to K.L's apartment under the guise of looking for Hillary's cell phone.  2JT. at 300-304.  Upon entering the apartment, Hillary was challenging K.L. to fight. Hillary did not have permission to enter K.L.'s apartment. 2JT. at 310.

**{¶24}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hillary trespassed in an occupied structure when K.L. was present with the intention to inflicted physical harm on K.L. and that Hillary did in fact inflict physical harm on K.L. We hold, therefore, that the state met its burden of production regarding each element of the crimes of aggravated burglary and, accordingly, there was sufficient evidence to support Hillary's' convictions for two counts of Aggravated Burglary.

1.2 Manifest Weight of the Evidence.

**{¶25}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶26} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶27} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

1.2.1 Issue for Appeal.

1.2.2. *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶28} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶29} In the case at bar, the jury heard the witnesses and viewed the evidence. In addition, the jury heard K.L.'s testimony and M.G.'s testimony subject to cross-examination. The jury heard Hillary's attorney's arguments and explanations about Hillary's actions. Thus, a rational basis exists in the record for the jury's decision.

{¶30} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Hillary's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Hillary's guilt. The jury neither lost its way nor created a miscarriage of justice in convicting Hillary of the offenses.

{¶31} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Hillary was convicted.

{¶32} Hillary's First Assignment of Error is overruled.

II.

{¶33} In her Second Assignment of Error Hillary challenges the imposition of the consecutive terms on the ground that the record does not support the imposition of consecutive sentences for two counts of Aggravated Burglary.

2. Standard of Appellate Review.

2.1 Manifest Weight of the Evidence.

{¶34} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31.

{¶35} In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C.

2929.12, while R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. ___ Ohio St.3d ___, 2019-Ohio-4761, ¶16-18; *State v. Anthony,* 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶60.

{¶36} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

{¶37} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See* also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

{¶38} In the case at bar, Hillary does not contest the length of her sentences; rather her arguments center upon the trial court's decision to make the sentences for two counts of Aggravated Burglary consecutive. As the Ohio Supreme Court noted in *Gwynne,*

> Because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing
>
> judge's findings made under R.C. 2929.14(C)(4) as falling within a court of

appeals' review, the General Assembly plainly intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences. *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").

While R.C. 2953.08(G)(2)(a) clearly applies to consecutive-sentencing review, R.C. 2929.11 and 2929.12 both clearly apply only to *individual* sentences.

2019-Ohio-4761, ¶¶16-17(emphasis in original).

{¶39} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See Id*. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

{¶40} Hillary agrees that the trial judge in her case made the requisite findings to impose consecutive sentences under R.C. 2929.14(C)(4). [Appellant's Brief at 7].

2.1.1 Issue for Appeal.

2.1.2 *Whether the trial court's decision to impose consecutive sentences in Hillary's case is supported by the record.*

{¶41} According to the Ohio Supreme Court, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required

by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. at ¶29.

{¶42} The plurality of the Ohio Supreme Court in *Gwynne* held that appellate courts may not review consecutive sentences for compliance with R.C. 2929.11 and R.C. 2929.12. *See* 2019-Ohio- 4761, ¶18.

{¶43} The record demonstrates and Hillary agrees that the trial court made the findings required in order to impose consecutive sentences. Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Further, the record contains evidence supporting the trial court's findings under R.C. 2929.14(C)(4). Therefore, we have no basis for concluding that it is contrary to law.

{¶44} Hillary's Second Assignment of Error is overruled.

{¶45} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur

.