[Cite as *State v. Sturgill*, 2020-Ohio-6665.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-03-018 |
| | : | O P I N I O N |
| - vs - | | 12/14/2020 |
| | : | |
| MATTHEW L. STURGILL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018CR00456

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103

**RINGLAND, J.**

{¶1}  Appellant, Matthew Sturgill, appeals his convictions for two counts of felonious assault following a bench trial in the Clermont County Court of Common Pleas.  For the reasons detailed below, we affirm.

{¶2}  This case involves a physical altercation between the then 28-year-old Sturgill and two other individuals on May 28, 2018.  On that date, Sturgill went to his mother's home

at the Eastgate Woods Apartments in Clermont County. Living at that apartment with Sturgill's mother was Sturgill's 16-year-old nephew, Eli. There is no dispute that Sturgill's mother is Eli's grandmother. It is also undisputed that Eli had some criminal history, was on house arrest, and had previously beaten up his grandmother's boyfriend.

{¶3} The purpose of Sturgill's visit was to do laundry and visit with Eli. Once Sturgill arrived, Sturgill's mother left Sturgill in charge while she went to spend the day with her boyfriend. When she left, Sturgill's mother told Sturgill that Eli could only have one friend visit the house while she was away. Eli's friend, Tristan, later arrived at the apartment with his girlfriend.

{¶4} Despite his mother's instructions, Sturgill let Tristan and his girlfriend into the apartment where the group sat in the living room. At some point, Eli took Sturgill aside and asked that he not reveal his identity to any of his friends. This was because Eli knew that Sturgill had been convicted of sexually assaulting Eli's older sister, who was a minor at the time, but that his friends did not. Eli did not want his friends to know that he was associating with the perpetrator of that offense, Sturgill. Sturgill responded by telling Eli that if any of them tried to "jump him" that he would stab them with his knife that he kept in his pocket.

{¶5} Sturgill then left the apartment to purchase a Four Loko alcoholic beverage and a Monster Energy drink. After Sturgill returned to the apartment, more of Eli's friends arrived. The new friends were Eli's "Wilmington friends" that Sturgill perceived as more aggressive. This group included Cory, Kiana, Donovan, Kathleena, and Christian. Sturgill was not acquainted with any of Eli's "Wilmington friends" at that time. However, within a short time after their arrival, Cory began arguing and yelling at Tristan, calling him names, and accusing him of stealing money. According to Eli, Sturgill told both Cory and Tristan to leave the apartment, but they ignored him.

{¶6} After ignoring Sturgill's instructions to leave, Tristan, who was considerably

- 2 -

smaller than Cory, moved away from Cory into the kitchen. Christian then followed Tristan into the kitchen and started yelling at him about money that he owed Eli. Once there, Christian smacked Tristan several times and pushed him into the refrigerator. In response, Sturgill went up to Christian, told him to stop hitting Tristan, smacked him across his face with the back of his hand, and told him "to knock it off and get out." On one or more occasions after that, Sturgill told Eli's "Wilmington friends" that they should "take it outside" if they were going to keep causing trouble.

{¶7} After a few moments of calm, the trouble erupted again. Specifically, Cory began arguing with Tristan again about money. Eventually, Cory shoved Tristan, who stumbled onto the balcony. Cory also yelled at Tristan to come outside to fight him. At this point, Tristan was on the balcony as Sturgill stood in the doorway while Cory was still in the living room. At this juncture, Cory aggressively moved toward the balcony where Sturgill was standing until they were face to face. Once there, Sturgill claimed that Cory appeared to be "pissed off" and felt threatened by how aggressive Cory was behaving. Both Eli and Sturgill testified that Cory was at that time still trying to get to Tristan while Sturgill was blocking his path. Sturgill and Cory continued to argue back and forth until eventually Sturgill punched Cory in the face.

{¶8} After Sturgill punched Cory, Eli took Cory's side and reacted by striking Sturgill in the face. Cory then tackled Sturgill and started punching him in the face and stomach. The fight lasted for an undetermined amount of time where both Eli and Cory were hitting Sturgill as he laid on the ground. Sturgill testified that Eli was also stomping on his head. Sturgill tried to defend himself against the blows that were being inflicted upon him, but Cory and Eli kept striking him. Claiming that he was in fear of his life, Sturgill then pulled a large pocketknife from his pocket, opened the blade, and swung the knife, first connecting with Eli near his upper leg/groin area. Upon being stabbed, Eli immediately fell backwards and

stopped fighting. Sturgill then stabbed at Cory in his rib area. Cory hit Sturgill a few more times before running out of the apartment with the rest of its occupants.

{¶9} Following this altercation, Eli was bleeding profusely while Sturgill got a towel and tried to stop the bleeding. Eli called for an ambulance and both he and Sturgill waited for the police and emergency personnel to arrive. When police and emergency personnel arrived, Eli was taken to the hospital where he had surgery to treat his knife wound. Cory only later discovered that he had been hit with the knife after fleeing the apartment. Meanwhile, Sturgill was taken to the police station and interviewed by Detective John Pavia. During the interview, Sturgill falsely claimed that he had no knowledge as to how Eli or Cory suffered knife wounds. Sturgill later recanted these statements during trial and testified that he lied to Detective Pavia because he was afraid both he and Eli would be in trouble.

{¶10} Resulting from this incident, Sturgill was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2). The matter proceeded to a bench trial that ultimately concluded on June 27, 2019. At trial, Sturgill admitted to stabbing both Eli and Cory with the knife but argued that he had acted in self-defense. Sturgill alternatively argued that he should be found guilty of the lesser offense of aggravated assault because his conduct was mitigated by provocation. After taking the matter under advisement, the trial court issued a written decision finding Sturgill guilty as charged. In so doing, the trial court specifically analyzed and issued findings of fact as to why it did not find Sturgill acted in self-defense or under provocation. The trial court then sentenced Sturgill to three years of prison on each count and ordered those terms be served concurrently. Sturgill now appeals his conviction, raising two assignments of error for review.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED IN NOT APPLYING R.C. 2901.05 AS AMENDED BY H.B. 228.

{¶13} In his first assignment of error, Sturgill argues the trial court erred by not applying R.C. 2901.05, as amended by H.B. 228, which shifts the burden of proof for self-defense. Since the trial court did not apply R.C. 2901.05 as amended, Sturgill argues that his conviction must be reversed. Following review, we find Sturgill's argument is without merit.

{¶14} Prior to March 28, 2019, the self-defense statute placed "[t]he burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, [was] upon the accused." Former 2901.05(A). However, on March 28, 2019, the self-defense statute was amended to shift the burden of proof to the state to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1). This requires the state to "prove that the accused person did not use force in self-defense[, defense of another, or defense of that person's residence, as the case may be,] beyond a reasonable doubt if there is evidence that the accused used force in self-defense[, defense of another, or defense of that person's residence]."

{¶15} In *State v. Gloff*, 12th Dist. Clermont No. CA2019-06-047, 2020-Ohio-3143, this court held that "the General Assembly enacted H.B. 228 to be effective March 28, 2019 and therefore criminal trials held on or after that date must be conducted in accordance with the provisions of that section." *Id.* at ¶ 28, citing *State v. Humphries*, 51 Ohio St.2d 95 (1977), paragraph four of the syllabus. This court reached this decision upon finding "[t]he H.B. 228 amendment applies prospectively to trials," and the "applicable burden of proof for the affirmative defense of self-defense," and not "the conduct giving rise to the offense." *Id.* at ¶ 23. Therefore, following the effective date of the amendment, "if evidence is presented that 'tends to support that the accused person used the force in self-defense' then 'the

- 5 -

prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense.'" *Id.* at ¶ 28.

{¶16} As noted above, Sturgill argues the trial court erred by failing to apply the H.B. 228 amendment to his trial. The state concedes that the amendment found in H.B. 228 was applicable at the time of his trial. The state, however, argues that this error was harmless because H.B. 228 did not change the nature of self-defense as an affirmative defense. The state instead maintains that Sturgill failed to satisfy his initial burden to submit evidence that "tends to support that the accused person used the force in self-defense," which would then shift the burden to the prosecution to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense."

{¶17} Following review, we agree with the state. Though H.B. 228 was effective at the date of Sturgill's trial, "the amended statute does not affect the burden of production – it remains with the defendant." *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 7. Since the amended self-defense statute does not affect the burden of production, the state does not assume the burden of persuasion until the defendant first meets his burden. *Id.* Specifically, the new language in R.C.2901.05(B), as amended by H.B. 228, provides that the burden of persuasion shifts to the prosecution when "there is evidence presented that *tends to support*" a self-defense justification. (Emphasis added).

{¶18} Although the "tends to support" language is new to the statute, we concur with the decisions from our sister districts concluding that the added phrase does not change the nature of defendant's burden of production. *See State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24 ("the phrase 'tends to support' does not connote that a new standard should apply to the determination of whether a defendant is entitled to a self-defense instruction"); *State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 13; *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶ 50, 69. *Williams*

at ¶ 8.

{¶19} The burden of going forward is met when the evidence, if true, "would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *State v. Melchior*, 56 Ohio St. 2d 15 (1978), paragraph one of the syllabus. In turn, to meet the burden of production under the amended statute, a defendant must produce evidence that "when viewed in the light most favorable to the defendant is sufficient to case a reasonable doubt as to guilt." *Parrish* at ¶ 14. That is to say, "[i]n order for evidence that 'tends' to support an affirmative defense, it must be sufficient to raise a question in the mind of a reasonable juror, as is already required under the existing standard set forth in [*State v. Melchior*, 56 Ohio St.2d 15 (1978)]." *Tolle* at ¶ 24

{¶20} To establish the affirmative defense of self-defense, a defendant must establish three elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that the defendant did not violate any duty to retreat or avoid danger. *State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671, ¶ 26; citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶21} As to the first element, "a person is not entitled to claim defense of another in regard to a physical altercation if the person being defended voluntarily entered the physical altercation." *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 50. Ohio courts have in fact "long recognized that a person cannot provoke [an] assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002-Ohio-415, *7.

{¶22} The second element requires a defendant show he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape

was the use of force. *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36. One component of the second element entails a showing that the defendant used "only as much force as is reasonably necessary to repel the attack." *State v. Jackson*, 12th Dist. Butler No. CA2013-12-227, 2015-Ohio-478, ¶ 19; *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 30. Implicit in the second element of self-defense is the requirement that the degree of force used was warranted under the circumstances and proportionate to the perceived threat. *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 58. Thus, "'[i]f * * * the amount of force used is so disproportionate that it shows an "unreasonable purpose to injure," the defense of self-defense is unavailable.'" *State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012-Ohio-3934, ¶ 55, quoting *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-Ohio-87, ¶27,

{¶23} In *Ray*, 2013-Ohio-3671, the defendant and his stepfather got into a physical altercation where the stepfather chest bumped the defendant and backed him against a wall. *Id.* at ¶ 4. The fight escalated and the stepfather punched the defendant repeatedly in the head to the point where the defendant could not "think clearly" and "started losing vision." *Id.* at ¶ 5. Claiming that he feared his stepfather was "going to do [him] great bodily harm," the defendant reached for a 5.25-inch-long hunting knife and stabbed his stepfather. *Id.* The stepfather ultimately died from his injuries. *Id.* at ¶ 11. On appeal, the defendant claimed that the trial court erred by failing to properly instruct the jury on self-defense. *Id.* at ¶ 22. This court affirmed the defendant's conviction after concluding that the defendant's self-defense assertion failed because he "used deadly force when he was not faced with deadly force, only fists." *Id.* at ¶ 32.

{¶24} The trial court analyzed Sturgill's self-defense claim and concluded that "self-defense is inapplicable to [Sturgill's] situation." As to Cory, the trial court found that self-defense did not apply because Sturgill struck Cory first and instigated the fight. As to Eli,

the trial court found that Sturgill, in stabbing him with a knife, did not use reasonable force.[1] Following review, we concur with the trial court that self-defense was not applicable in this case and reiterate the trial court's finding that Sturgill "has failed to satisfy all of the elements for self-defense." In so holding, we note that unlike in *Gloff* where this court could not "assume the jury would reach the same verdict beyond a reasonable doubt when it was instructed that self-defense was Gloff's burden alone," this case does not present those same concerns. *Gloff*, 2020-Ohio-3134 at ¶ 24.

{¶25} In the present case, though Cory had been arguing with Tristan and was generally behaving in an unruly manner in the apartment, the evidence at trial was undisputed that Sturgill initiated the physical altercation with Cory. Sturgill, himself, admitted that he punched Cory first. The attack on Cory is what then led to Eli injecting himself into the altercation by hitting Sturgill. In other words, as to Cory, the trial court appropriately found that Sturgill did not satisfy the first element of self-defense because he was clearly at fault in creating the situation giving rise to the fight. *See, e.g., State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 29; *State v. Wagner*, 3d Dist. Seneca No. 13-15-18, 2015-Ohio-5183, ¶ 22 (defendant was at fault because he struck the victim with a pool stick while they were engaged in a verbal argument).

{¶26} We also agree with the trial court that Sturgill did not use reasonable force as to either victim. Here, the then 28-year-old Sturgill was being beaten up by Eli and Cory, two unarmed 16-year-olds, yet resorted to stabbing them both with a knife that he had on his person and which he previously indicated he would use if anyone tried to "jump him." This caused Eli to bleed profusely and necessitated urgent medical care and surgery to repair the damage to his leg. To the contrary, Sturgill had only light bruising on his arms,

---

1. We note the trial court found Sturgill's claim of self-defense failed as to Cory for two reasons, both that he instigated the fight and used excess force.

redness on his face, and a split lip. Thus, the evidence adduced at trial demonstrates that Sturgill used excessive and disproportionate force in stabbing both Eli and Cory.

{¶27} In light of the foregoing, we agree with the trial court that Sturgill could not satisfy the elements for a valid self-defense claim. As a result, since he did not meet his burden of production, Sturgill failed to submit evidence that "tends to support that the accused person used the force in self-defense" that would result in the shifting of the burden of persuasion to the state. Therefore, we find the trial court did not err by finding that self-defense was inapplicable. To the extent that the trial court misapplied the incorrect standard, we find any such error in this case is harmless. Crim. R. 52(A); *Williams*, 2020-Ohio-5245 at ¶ 13. Accordingly, finding the error harmless, Sturgill's first assignment of error is overruled.

{¶28} Assignment of Error No. 2:

{¶29} THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT.

{¶30} In his second assignment of error, Sturgill argues that the trial court should have considered an alternative conviction of aggravated assault. However, contrary to Sturgill's claim, the trial court did consider whether Sturgill should have been convicted of aggravated assault. The trial court in fact expressly addressed why Sturgill should be found guilty of felonious assault, rather than aggravated assault, in its final judgment entry. Thus, because the trial court considered Sturgill's alternative argument alleging that he should be convicted of two counts of aggravated assault rather than two counts of felonious assault, the issue is whether the trial court's decision rejecting that argument was against the manifest weight of the evidence.

{¶31} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."

*State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 78.  In determining whether the conviction is against the manifest weight of the evidence, an appellate court "must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Sheldon*, 12th Dist. Brown No. CA2013-12-018, 2014-Ohio-5488, ¶ 13.  "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction."  *Id.*

{¶32}  As noted above, Sturgill was convicted of two counts of felonious assault under R.C. 2903.11(A)(2), which provides "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * * by means of a deadly weapon or dangerous ordnance."  As defined by R.C. 2923.11(A), a "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."  Because the elements of aggravated assault are identical to the elements of felonious assault, except for the additional mitigating element of provocation, aggravated assault is an offense of an inferior degree of felonious assault.  *State v. McOsker*, 12th Dist. Clermont No. CA2016-05-025, 2017-Ohio-247, ¶ 14, citing *State v. Mack*, 82 Ohio St.3d 198, 200 (1998).

{¶33}  A person is guilty of aggravated assault if the person, "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, * * * knowingly * * * [c]ause[s] serious physical harm to another or to another's unborn."  R.C. 2903.12(A)(1).  "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force."  *State v. Spencer*,

12th Dist. Clermont No. CA2017-04-020, 2018-Ohio-641, ¶ 15.

{¶34} "In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must [first] be applied." *State v. Shane*, 63 Ohio St.3d 630, 634 (1992). Under an objective standard, "the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *McOsker* at ¶ 16. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that a defendant was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give the aggravated assault instruction. *Id*. However, if the objective standard is met, "the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" *Mack*, 82 Ohio St.3d at 201, quoting *Shane* at 635. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Id.*

{¶35} The trial court found that Sturgill failed to meet the subjective standard for provocation because he testified that he stabbed out of "fear," not provocation. We find no error in the trial court's decision.

{¶36} As set forth above, the record reflects that when Sturgill punched Cory that Eli retaliated against him and in short order Cory and Eli were both landing blows on Sturgill. During his testimony, Sturgill stated that he was scared and acted out of "fear." As Eli and Cory continued to strike him, Sturgill testified that he told them both to stop and when they did not, he pulled his knife out and stabbed them both. When later questioned why he had lied to Detective Pavia about stabbing Eli, Sturgill testified that he was afraid to go back to prison "[b]ecause I defended myself."

{¶37} Following review, we concur with the trial court's conclusion that the evidence did not demonstrate that Sturgill flew into a sudden passion or rage when Cory and Eli were

punching him. Instead, the trial court found that Sturgill stabbed Eli and Cory because he claimed he was scared for his safety, rather than sudden passion or in a sudden fit of rage. This finding is supported by Sturgill's own testimony where he claimed he acted out of fear. Such actions do not comport with the concept of provocation. Since fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage required for an aggravated assault charge, the trial court appropriately found that he was guilty of felonious assault, as opposed to aggravated assault. *Mack*, 82 Ohio St.3d at 201; *State v. Baker*, 12th Dist. Butler No. CA2007-06-152, 2008-Ohio-4426, ¶ 29; *State v. Young*, 10th Dist. Franklin No. 07AP-707, 2008-Ohio-2277, ¶ 14; *State v. Harding*, 2d Dist. Montgomery No. 24062, 2011-Ohio-2823, ¶ 43; *State v. Owens*, 8th Dist. Cuyahoga No. 98165, 2012-Ohio-5887, ¶ 18. Therefore, finding no merit to any of the arguments raised by Sturgill herein, Sturgill's second assignment of error is overruled.

{¶38} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.